Warren H. WHEELER, a Minor, by J. H. Wheeler, his father and next friend, et al., Plaintiffs,

v.

DURHAM CITY BOARD OF EDUCA-TION a body politic in Durham County, North Carolina, Defendant.

C. C. SPAULDING, III, a Minor, by C. C. Spaulding, Jr., his father and next friend, et al., Plaintiffs,

v.

DURHAM CITY BOARD OF EDUCA-TION, a body politic in Durham County, North Carolina, Defendant.

Nos. C-54-D-60, C-116-D-60.

United States District Court
M. D. North Carolina,
Durham Division.

July 20, 1961.

72

Conrad O. Pearson, M. Hugh Thompson, William A. Marsh, Jr., F. B. McKissick and J. H. Wheeler, Durham, N. C., Jack Greenberg and Thurgood Marshall, New York City, for plaintiffs.

Spears, Spears & Powe, Durham, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

These class actions, consolidated for trial, were commenced by the plaintiffs, members of the Negro race, against the Durham City Board of Education, to have declared the rights of the minor plaintiffs and the class of persons they represent to attend the public schools of the City of Durham without discrimination on account of race or color, and for injunctive relief. All the plaintiffs are citizens of the City of Durham, North Carolina, and the minor plaintiffs are all eligible to attend the Durham public schools. The adult plaintiffs are the parents or guardians of the minor plaintiffs, and bring this action individually and as next friend of said minors.

The complaint in No. C–54–D–60, entitled "Warren H. Wheeler, a Minor, by J. H. Wheeler, his father and next friend, et als v. Durham City Board of Education, a body politic in Durham County, North Carolina," hereinafter referred to as the "Wheeler" case, was filed on April 29, 1960, by 118 adult plaintiffs personally and as next friend of 163 minor plaintiffs, on behalf of themselves and all other citizens of the City of Durham, North Carolina, similarly situated. The complaint in No. C–116–D–60, entitled "C. C. Spaulding, III, a Minor, by C. C. Spaulding, Jr., his father and next friend, et als v. Dur-

ham City Board of Education, a body politic in Durham County, North Carolina," hereinafter referred to as the "Spaulding" case, was filed on September 12, 1960, by 90 adult plaintiffs personally and as next friend of 116 minor plaintiffs, on behalf of themselves and all other citizens of the City of Durham, North Carolina, similarly situated. The Wheeler case relates to the 1959–1960 school year, and the Spaulding case relates to the 1960–1961 school year. Many of the plaintiffs in the Wheeler case are also plaintiffs in the Spaulding case.

It appearing that both cases involved common questions of law and fact, and that a consolidation would reduce cost and delay, the plaintiffs' motion for consolidation was allowed. Named defendants in both cases, in addition to the Durham City Board of Education, were the individual members of the Board and the superintendent of the Durham City Schools. Upon motion of the defendants, the actions were dismissed as to the individual members of the School Board and the superintendent, since it was concluded that the plaintiffs, if they prevailed in these actions, are entitled to obtain complete relief against the Durham City Board of Education, a body corporate.

At the conclusion of the trial, the court gave the parties a specified time within which to file proposed findings of fact, conclusions of law, and briefs, after which the parties would be heard orally.

The requests for findings of fact, conclusions of law, and briefs of the parties having been received, the court, after considering the pleadings and evidence, including exhibits, answers to interrogatories and stipulations filed, and briefs and oral arguments of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

Findings of Fact

1. Plaintiffs in both cases are members of the Negro race and are citizens and residents of the City of Durham, North Carolina. Each minor plaintiff possesses all the qualifications for admis-

sion to the public schools of the City of Durham. The adult plaintiffs are the parents or guardians of the minor plaintiffs and bring these actions individually and as next friend of said minors, on behalf of themselves and all other citizens of the City of Durham, North Carolina, similarly situated.

2. The defendant, Durham City Board of Education, is a body corporate and maintains and generally supervises the operation of the public schools for the City of Durham, North Carolina. In operating the public schools for the City of Durham, the defendant exercises such powers and duties as are conferred upon it by Chapter 115 of the General Statutes of North Carolina.

3. The defendant operates and maintains two high schools in the City of Durham, namely Durham High School and Hillside High School. Durham High School is located in the northwest area of the city and Hillside High School is located in the southern area of the city. Prior to the 1959–1960 school year, Durham High School was attended solely by white students and Hillside High School was attended solely by Negro students.

4. The defendant operates and maintains four junior high schools in the City of Durham, namely: Brogden Junior High School, located in the northern area of the city; Carr Junior High School, located in the northwest area of the city; East Durham Junior High School, located in the eastern area of the city; and Whitted Junior High School, located in the southern area of the city. Prior to the 1959–1960 school year, Brogden Junior High School, Carr Junior High School and East Durham Junior High School were attended solely by white students and Whitted Junior High School was attended solely by Negro students.

5. The defendant operates and maintains 17 elementary schools in the City of Durham, namely: Club Boulevard Elementary School, located in the northeast area of the city; Edgemont Elementary School, located in the eastern area of the city; Fuller Elementary School, located in the central area of the city; Holloway Street Elementary School, located in the eastern area of the city; Morehead Elementary School, located in the southern area of the city; North Durham Elementary School, located in the north-central area of the city; E. K. Poe Elementary School, located in the northwest area of the city; Y. E. Smith Elementary School, located in the northwest area of the city; Southside Elementary School, located in the western area of the city; George W. Watts Elementary School, located in the north-central area of the city; Burton Elementary School, located in the southeast area of the city; Crest Street Elementary School, located in the northwest area of the city; East End Elementary School, located in the northeast area of the city; Lyon Park Elementary School, located in the southwest area of the city; W. G. Pearson Elementary School, located in the southeast area of the city; C. C. Spaulding Elementary School, located in the southern area of the city; and Walltown Elementary School, located in the north-central area of the city. Club Boulevard Elementary School, Edgemont Elementary School, Fuller Elementary School, Holloway Street Elementary School, Morehead Elementary School, North Durham Elementary School, E. K. Poe Elementary School, Y. E. Smith Elementary School, Southside Elementary School and George W. Watts Elementary School have always been and are now attended solely by white students. Burton Elementary School, Crest Street Elementary School, East End Elementary School, Lyon Park Elementary School, W. G. Pearson Elementary School, C. C. Spaulding Elementary School and Walltown Elementary School have always been and are now attended solely by Negro students.

6. On May 30, 1960, there were 1757 students in attendance at the white high and junior high schools, 5,503 students in attendance at the white elementary schools, 1,053 students in attendance at the colored high and junior high schools, and 4,847 students in attendance at the colored elementary schools.

7. School census reports are prepared annually by the defendant for the purpose of assigning students in a manner which employs the school accommodations of the City of Durham to the best advantage.

8. The Negro and white elementary school children in the City of Durham at all relevant times have been assigned to schools in the first instance solely on the basis of school zones delineated on two maps of the City of Durham, with the exception of a few children outside of such attendance zones because of physical disabilities. One of these maps, which includes the entire City of Durham, is divided into zones for Negro elementary students only. The other map, which includes the entire City of Durham, is divided into zones for white elementary students only. The school zones are defined by availability of school facilities, population density, distance and race.

9. On August 4, 1959, the defendant School Board held a regular meeting at which time initial assignments of students to the various schools for the 1959–1960 school year were made. Notices of the assignments were published in the Durham Morning Herald, a daily newspaper published in the City of Durham, on August 7 and 14, 1959.

10. Each child then attending a school by assignment from the Board was assigned to the same school for the 1959–1960 school year, except those children having satisfactorily completed the course of instruction of the school previously attended were assigned to the next succeeding grade in the school which served the graduates of the school from which they had graduated. This resulted in children graduating from the all white elementary schools being assigned to the all white junior high schools, and graduates of the all white junior high schools being assigned to the Durham High School, which had theretofore been attended solely by white students. It also resulted in Negro students graduating from all colored elementary schools being assigned to the Whitted Junior High School, and graduates of Whitted Junior High School being assigned to the Hill-

side High School. As earlier noted, Whitted Junior High School and Hillside High School were attended solely by Negro children. All white children entering school for the first time were assigned to all white elementary schools in accordance with the "white" attendance zone map, and all Negro children entering school for the first time were assigned to all Negro elementary schools in accordance with the "Negro" attendance zone map. The notice of assignments provided that applications for reassignment would be received according to the laws of the State of North Carolina, and that such applications must be presented to the principal of the school to which the child had been assigned.

11. With a few exceptions, the assignments resulted in each Negro child being assigned to the all Negro school nearest his home, and each white child being assigned to the all white school nearest his home. In many instances, minor plaintiffs lived nearer comparable all white schools than the all Negro schools to which assigned. This was particularly true with reference to high and junior high schools.

12. Following the initial assignments on August 4, 1959, approximately 225 Negro children, including the plaintiffs in the Wheeler case, in apt time, filed with the defendant Board applications for reassignment from the all Negro schools to which they had been assigned, to schools attended solely by white students.

13. On August 25 and 28, 1959, the defendant Board held special meetings and considered each of said applications for reassignment. Pursuant to their requests, three Negro students were assigned to the Durham High School, two were assigned to Brogden Junior High School, and two were assigned to Carr Junior High School, all being schools presently attended solely by white students. No Negro elementary school students were reassigned. The parents of each of the minor plaintiffs in the Wheeler case were duly notified of the action of the Board.

14. Thereafter, each of the plaintiffs in the Wheeler case gave notice of appeal

and requested a hearing on their respective applications for reassignment. The hearings were set for September 21, 1959, at 7:30 p. m., and each of said plaintiffs was duly notified of the date and place thereof. There is some contention that a few of the plaintiffs did not file their applications for a hearing within the time prescribed by law, but the record is not clear as to which applications were not timely filed. In any event, none of the applications were denied because of failure to file same in time.

15. In practically every instance, the plaintiffs listed their desire to attend desegregated schools as the principal reason for requesting reassignment. Other reasons, such as the desired school being closer, overcrowded conditions in the school to which assigned, better facilities and opportunities, and the like, were in some instances listed as to why reassignment was desired.

16. At the opening of the hearing held on September 21, 1959, C. O. Pearson, Esquire, one of the attorneys for the plaintiffs, stated that he desired to file powers of attorney executed by each of the adult plaintiffs. He further stated that he and associate counsel had prepared a memorandum on behalf of each of the plaintiffs setting forth their reasons as to why the applications for reassignment should be granted. The following memorandum was then read as typical of the memorandum prepared on behalf of each plaintiff:

"North Carolina

"Durham County

"Before the Durham City Board of Education

"In re: Appeal from rejection of reassignment application, C. O. Pearson, M. Hugh Thompson, J. H. Wheeler, F. M. McKissick and William A. Marsh, Jr., Attorneys for W. A. Clement and wife, Mrs. W. A. Clement, parents of Arthur John Clement, who was assigned by the Durham Board of Education to the C. C. Spaulding School on a racial basis, hereby appeals to the said Board from the denial of application for reassignment heretofore filed in apt time and rejected by the said Board, and respectfully requested that the said child be assigned to the school to which reassignment has been sought, and said application for reassignment was based on the fact that a white child situated as this applicant is would have been assigned to the school to which this applicant sought reassignment.

"Applicant's fundamental objection to the assignment and denial of request referred to above is that the Durham City Board of Education is maintaining a school system in which children are assigned to schools on the basis of race, contrary to the 14th Amendment of the United States Constitution.

"Applicants respectfully pray that the Durham City Board of Education take affirmative steps to abolish racial discrimination within the system and to assign applicant without regard to race.

"This the 21st day of September, 1959.

"Submitted by counsel."

After reading the memorandum, Mr. Pearson stated that the plaintiffs had nothing further to say which they felt would be of aid to the Board in arriving at a decision. The chairman of the Board called the names of each of the applicants to determine who were present. Before doing so, the chairman stated that it was not necessary for the children to be present, but that at least one of the parents of each of the minor children should be present, and that it was not enough for the parents to be represented by counsel. It was then determined that 63 of the adult plaintiffs and 50 of the minor plaintiffs were absent.

17. The defendant Board held an executive session immediately following the hearing. A resolution was first adopted denying all the applications for reassignment in cases where at least one parent was not present for the reason that this constituted "failure to comply with the

requirements for exhausting administrative remedies provided by law."

18. The defendant Board next adopted a resolution denying all the applications for reassignment to elementary schools, and gave the following as its reasons for denying these applications:

"In taking this action regarding elementary pupils, members of the Board reaffirmed the position taken by the Board at a special meeting August 25, 1959, to the effect that (1) elementary schools to be built shortly will relieve materially the crowded conditions in a number of schools, and (2) that changes in the pattern of school population makes it unwise and perhaps impossible to transfer numbers of elementary pupils at the present time."

19. The defendant Board finally adopted a resolution denying all the applications for reassignment to junior high schools and the Durham High School, but gave no reason for its denial of these applications.

20. On August 1, 1960, the defendant Board, at a regular meeting, made initial assignments of students to various schools for the 1960–1961 school year. Notices of the assignments were published in the Durham Morning Herald on August 3 and 10, 1960.

21. Generally, the initial assignments of students for the 1960–1961 school year were made on the same basis as the initial assignments for the 1959–1960 school year, including the use of the "Negro" and "white" zone maps in the assignment of elementary students. Except for the Negro students previously assigned to Brogden Junior High School, Carr Junior High School, and Durham High School, the initial assignments for the 1960–1961 school year had the effect of continuing complete segregation in all the Durham city schools.

22. Following the initial assignments made on August 1, 1960, approximately 205 Negro children, including the plaintiffs in the Spaulding case, in apt time, filed with the defendant Board applications for reassignment from the all Negro school to which they had been assigned.

23. As in the Wheeler case, the plaintiffs in the Spaulding case, in practically every instance, listed the desire to attend desegregated schools as the principal reason why reassignment was requested. Other reasons, such as the desire to attend a school nearer their home, overcrowded conditions in the school to which assigned, better opportunities and better facilities in the school they desired to attend, and the like, were listed in some instances as to why reassignment was desired.

24. On August 24, 1960, the defendant Board held a special meeting and considered each application for reassignment, including the applications of the plaintiffs in the Spaulding case. The Board approved the applications of three students for reassignment from Hillside High School to Durham High School, the applications of two students for reassignment from Whitted Junior High School to Brogden Junior High School, and the applications of two students for reassignment from Whitted Junior High School to Carr Junior High School. All the remaining applications for reassignment, including the applications of all the plaintiffs in the Spaulding case, were denied. The Board stated that the denial of the remaining applications was necessary "in order to best promote the orderly and efficient administration of the public schools of this unit, the effective instruction of children subject to assignment by the Board, and the health, safety, and general welfare of such children, and each of them, and for the proper utilization of the physical facilities presently available."

25. Thereafter, each of the plaintiffs in the Spaulding case made timely and proper applications for a hearing on the denial of their applications for reassignment, and the parents of each of said minor plaintiffs were duly notified by the defendant Board that a meeting would be held in the auditorium of the Fuller School building on September 12, 1960,

at 7:30 p. m., for the purpose of conducting the requested hearings.

26. At the opening of the hearing, William A. Marsh, Jr., Esquire, one of the attorneys for the plaintiffs, stated that he and his associate counsel held powers of attorney from the parents of each of the minor plaintiffs. Among other things, the powers of attorney authorized plaintiffs' counsel to represent them "in conference with school officials and in any administrative hearings before the School Board and with School Board members in devising a desegregation program," as well as to handle any litigation deemed necessary to protect their rights and the rights of other children to non-discriminatory education in the City and County of Durham, North Carolina. The powers of attorney were then filed with the secretary of the defendant Board. Mr. Marsh further stated that he and his associates had prepared a written memorandum for each child, setting forth reasons why the Board should reverse its previous action and grant the reassignments requested. The memoranda were couched in practically the identical language as the memoranda filed with the Board by C. O. Pearson, Esquire, on September 21, 1959, in connection with the hearings in the Wheeler case. The chairman of the Board thereupon called the names of each of the minor plaintiffs to determine who were present. It was determined that 35 of the adult plaintiffs and 75 of the minor plaintiffs were absent. In cases where parents were present, the chairman of the Board generally asked them if there was any additional evidence they desired to present or any statement they cared to make. In most instances the reply was in the negative. In a few instances, the parents protested the continuation of a segregated school system in the City of Durham.

27. At an executive session of the defendant Board immediately following the hearing, the Board first adopted a resolution denying all the applications for reassignment to elementary schools, and the minutes disclosed the following as its reasons for denying these applications:

"This action was taken primarily because pupils involved in nearly every instance lived nearer the school to which they were originally assigned, or near enough to that school to make no significant difference in travel distance. Among other reasons, it was pointed out that enrollment already reported in several schools to which reassignment was sought was overtaxing school facilities, that the pending vote on annexation made reassignments extremely undesirable at the present time, and that the building program to relieve overcrowdedness was about six months behind schedule in providing additional class room space."

28. The Board next denied all the applications for reassignments to junior high schools and the Durham High School "since no new information was presented at the hearing that would justify change in previous action of the Board."

29. School had commenced several days before the aforementioned hearings were conducted on September 21, 1959, and September 12, 1960. The 1959–1960 school year commenced on September 2, 1959, and the 1960–1961 school year commenced on August 30, 1960.

30. On December 1, 1960, Durham High School was overcrowded 16.2 per cent; Carr Junior High School was overcrowded 14 per cent; East Durham Junior High School was overcrowded 7.3 per cent; Morehead Elementary School was overcrowded 11 per cent; Hillside High School was overcrowded 12 per cent; Whitted Junior High School was overcrowded 18.3 per cent; Burton Elementary School was overcrowded 12.2 per cent; W. G. Pearson Elementary School was overcrowded 19.5 per cent and C. C. Spaulding Elementary School was overcrowded 18.2 per cent. Durham High School and Hillside High School are presently being enlarged, and it is anticipated that the overcrowded conditions will be

alleviated to some extent by the commencement of the 1961–1962 school term.

31. At least one of the parents, or person standing in *loco parentis*, of the following minor plaintiffs in the Wheeler case attended the hearing conducted by the defendant Board on September 21, 1959: Warren H. Wheeler, Carrie M. Barnes, Nathaniel A. Barnes, Jr., Alma Frances Barnes, Patricia Branch, Mary Branch, Michael Branch, Jerry Branch, Sloan Branch, Ronald E. Burgess, Frank E. Burgess, Festus Cameron, Barbara Ann Cole, Elvin J. Cole, Ronald M. Cole, Rose Mary Cole, Anna Louise Dunston, Robert D. Dunston, Barbara J. Dunston, Jessie R. Dunston, Deborah E. Ferguson, John E. Ferguson, Carol E. Ferguson, Adaphine C. Fogg, Deardrah G. Greene, Dwight R. Greene, Ronald L. Greene, Lafayette Greene, Olivia Harris, Cynthia J. Harris, Eleanor L. Harris, Veda A. Hedgepeth, Sonja Hedgepeth, Linda F. Hedgepeth, Linwood Jones, Clarence Ray Jones, Billy J. Jones, Larry E. Johnson, Eric L. Johnson, Shirley Johnson, Ellie Mae King, Ronald E. King, Phyllis F. King, Philip King, Beverly Ann King, Therron E. McCall, Gloria J. Morris, Peggy Morris, Faye Virginia Morris, Alfred D. Morris, Johnie Morris, Jr., Samuel Lee Morris, Dennis L. Morris, Phyllis A. Thompson, Augustus R. Thompson, Jr., Thelma E. Whitley, Mildred Whitley, Shirley Belinda Henderson, Cherolyn J. Henderson, Gertie Mae Badgett, Susie Badgett, Willie L. Badgett, Carrie M. Barnes, Nathaniel Barnes, Alma Frances Barnes, Mary Ellen Davis, Charles Spaulding, III, Robert Lee Valines, Pauline Valines, Larry T. Valines, Melbagene Brown Daye, Erroll A. Booker, Lyle C. Booker, Day Fugard Reed, Ronald W. Reed, Thomas Earl Prince, Harriet L. Prince, Jacquelyn Prince, Michael A. Crawford, Joyce E. Crawford, Conny Lee Crawford, Marvin C. Crawford, Barbara Jean Crawford, Lana Jeanette Brame, Constance C. Brame, Anita L. Brame, Claudette C. Brame, Margaret L. Waller and Brenda Simmons. None of the other minor plaintiffs in the Wheeler case attended the hearing conducted by the Board on September 21, 1959, and none were represented by either of their parents or person standing in *loco parentis*. Each of said children, however, was represented by the attorneys to whom their parents had given powers of attorney.

32. At least one of the parents, or person standing in *loco parentis*, of the following minor plaintiffs in the Spaulding case attended the hearing conducted by the defendant Board on September 12, 1960: Bobbie Jean Bailey, Robert Lee Bailey, Rosalind Faye Bailey, Alex Eli Bullock, Jr., Carolyn Delores Lee, Kenneth Ray Lee, Stella Louise Lyons, Cynthia Juanita Manuel, George Anthony Marrow, Fred Mason, Leroy Donell Mason, Lee Burton Porter, Jr., Maria Theresa Porter, Richard Francis Porter, Clintonice Lenell Rinehart, Beverly Eardell Scott, Hilda Juinita Scott, Joyce Aninita Scott, Donald Shelton Smoke, Wanna Faye Smoke, Aaron Alston Strudwick, Bernadette P. Strudwick, Leora Bailey, Cynthia LaCress Bullock, Linda Mae Bullock, James O'Dell Daniel, Jr., Bertha Ann Gunn, Jimmy Anthony Mann, Francis Louise Marrow, Gladys Luvenia Mason, Elijah Burnis Smoke, Jr., Jacqueline Vernell Smoke, Lindsey H. Strudwick, Ronald Lee Strudwick, Patricia Ann Sutton, Zretta Bailey, Mary Elizabeth Bailey, Marva Maxine Bullock, Brenda Joyce Gunn, James Jackson Henderson, Eloyd Ray Lyons, Evonne Marie Smoke, Carrie Linda Sutton and Warren Hervey Wheeler. None of the other minor plaintiffs in the Spaulding case attended the hearing conducted by the Board on September 12, 1960, and none were represented by either of their parents or person standing in *loco parentis*. Each of said children, however, was represented by the attorneys to whom their parents had given powers of attorney.

33. The notices with respect to the hearings conducted on September 21, 1959, and September 12, 1960, set forth no information plaintiffs were required to submit, and contained no standards or procedural regulations for said hearings.

34. Before and at the time of the hearings conducted on September 21,

1959, and September 12, 1960, the defendant Board had access to the school records of all the minor plaintiffs, and possessed information concerning achievement, residence and distance from schools of each of the minor plaintiffs. Before these meetings, the Board members had decided among themselves that no applications for change of assignments to elementary schools would be granted.

35. At the time of the hearings conducted on September 21, 1959, and September 12, 1960, including the time the final action was taken on the applications of the minor plaintiffs in both cases for reassignment, the defendant Board had not adopted any criteria or standards by which to judge applications for change of pupil assignment.

### Discussion

The principal questions for decision are (1) whether the plaintiffs have exhausted their administrative remedies under the North Carolina Assignment and Enrollment of Pupils Act, G.S. § 115–176 et seq., and (2) whether any of the minor plaintiffs were refused reassignment on account of race or color.

### I

Whether the Plaintiffs Have Exhausted Their Administrative Remedies under the North Carolina Assignment and Enrollment of Pupils Act.

A history of the operation of the Durham public schools following the Brown decisions,[1] and prior to the commencement of the 1959–1960 school year, is set out in some detail in McKissick v. Durham City Board of Education, D.C. M.D.N.C.1959, 176 F.Supp. 3. There this court, while holding that the plaintiffs had failed, and indeed had not even attempted, to comply with the state statutes relating to the enrollment and assignment of pupils, specifically condemned the method employed by the defendant in giving assignment notices, and particularly the delay in making assignments. It was observed that some of the resolutions adopted by the defendant Board strongly suggested that reassignments were being denied solely because of the race and color of the applicants. Notwithstanding these observations, the defendant has apparently continued its practices of assigning elementary students on the basis of two sets of city maps, one zoned exclusively for white students and the other zoned exclusively for Negro students, and the practice of giving assignment notices at times which make it practically impossible for students to exhaust their administrative remedies prior to the commencement of school terms. On the other hand, the plaintiffs continue to engage in practices which strongly suggest a lack of good faith compliance with the state statutes dealing with the enrollment and assignment of pupils. All the administrative remedies in the two cases under consideration were pursued after the pronouncements of the court in Holt v. Raleigh City Board of Education, D.C.E.D. N.C.1958, 164 F.Supp. 853, 863; affirmed 4 Cir., 1959, 265 F.2d 95, certiorari denied 1959, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63, holding that students seeking reassignment are delinquent in failing to attend hearings before school boards, and that appearance by an attorney is insufficient. The fact that administrative remedies provided under the state statutes, if fairly administered, must be exhausted before courts of the United States will grant injunctive relief in suits of this type, and the fact that such rights must be asserted as individuals, and not as a class or group, is no longer subject to debate. Carson v. Board of Education of McDowell County, 4 Cir., 1955, 227 F.2d 789; Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724, certiorari denied 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664; Covington v. Edwards, D. C.1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780; Holt v. Raleigh City Board of Education, D.C.E.D.N.C.1958, 164 F.Supp. 853, 863, affirmed 4 Cir., 1959, 265 F.2d 95, certiorari denied 1959, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63; McKissick v. Durham City Board of Ed-

---

1. Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 and Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

ucation, D.C.M.D.N.C.1959, 176 F.Supp. 3. It should be emphasized that we are not dealing with a situation where a school board had a fixed policy to maintain a pattern of total segregation in its school system, thereby relieving the plaintiffs of the requirement of the doing of a vain thing as a condition of relief. In advance of the hearings conducted on September 21, 1959, the defendant had desegregated the Durham High School, Brogden Junior High School and Carr Junior High School, and in advance of the hearings held on September 12, 1960, additional Negro students had been assigned to each of these previously all white schools.

Except in one or two instances, there was no attempt to explain the absence of the 63 adult plaintiffs and 50 minor plaintiffs at the hearings held in connection with the applicants in the Wheeler case, or the absence of 35 adult plaintiffs and 75 minor plaintiffs at the hearings held in connection with the applicants in the Spaulding case. The fact that they were represented by counsel is not sufficient. Holt v. Raleigh City Board of Education, Supra. It is also significant that at the hearings conducted on September 21, 1959, in connection with the applicants in the Wheeler case, the chairman of the defendant Board stated that at least one of the parents of each minor child should be present, and that it was not enough for the parents to be represented by counsel. The same attorneys appeared for the plaintiffs in both cases and, as earlier noted, some of the plaintiffs in the Wheeler case are also plaintiffs in the Spaulding case.

■ The applications for reassignment filed on behalf of the minor plaintiffs in both the Wheeler and Spaulding cases gave little information, other than the desire to attend an integrated school, as to why reassignment was requested. It was indicated in some instances that the school to which reassignment was sought was closer to the home of the applicant than the school to which assigned, but relative distances were not given. It is apparent that most of the plaintiffs in both cases were seeking a totally inte-grated school system rather than reassignment to any particular school. As has been repeatedly stated, the Constitution of the United States does not require integration, but merely forbids discrimination. Briggs v. Elliott, D.C.E.D.S.C. 1955, 132 F.Supp. 776, and Thompson v. County School Board of Arlington County, D.C.E.D.Va.1956, 144 F.Supp. 239. The parents of the minor plaintiffs involved were certainly in possession of the approximate distances to the various schools, and other pertinent data, and it is possible that they would have received different treatment from the school board had this information been supplied. While it is true that most of the pertinent information was available to the defendant Board from the school records in its possession, this is no valid excuse for the plaintiffs not supplying such data. However, so far as is disclosed by the record, none of the applications were denied for failure to supply adequate information. Another significant fact is that the defendant Board had no established criteria or standards by which to judge applications for change of assignment.

■■ In view of the manner in which the applications in question were handled by the defendant Board, and particularly the reasons assigned for denying the applications, it is concluded that those minor plaintiffs who attended either of the board hearings, or who were represented by one of their parents, or persons standing in *loco parentis*, adequately complied with the state statutes dealing with enrollment and assignment of pupils, and adequately exhausted their administrative remedies under those statutes. It is further concluded that those minor plaintiffs who did not attend either of the hearings, or who were not represented by at least one of their parents, or persons standing in *loco parentis*, did not adequately exhaust their administrative remedies prior to the institution of these actions.

■ These actions were instituted as class actions, and the plaintiffs are seeking, in addition to the protection of their individual rights, a decree integrating the entire Durham School System. How-

ever, the court is limited to the protection of the individual rights of those plaintiffs who exhausted their administrative remedies prior to the institution of the actions. As earlier noted, the United States Supreme Court has never suggested that mass mixing of the races is required in public schools. It has simply required that no child shall be denied admission to a school of his choice on the basis of race or color. There is, of course, no objection to a number of plaintiffs joining in the same suit, as was done in the cases under consideration. The fact that the plaintiffs have designated their cases as class actions, does not preclude the court from considering each application filed on behalf of the minor plaintiffs on its individual merits. Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780.

## II

## Whether Any of the Minor Plaintiffs Were Refused Reassignment on Account of Race or Color.

There can be little question but that many of the practices followed by the defendant Board during the 1959–1960 and 1960–1961 school terms were discriminatory and thus forbidden by the Fourteenth Amendment to the Constitution of the United States.

■ It is conceded that the defendant Board maintained a dual system of attendance areas for elementary students based on race. This offends the constitutional rights of the plaintiffs "and cannot be tolerated." Jones v. School Board of Alexandria, Virginia, 4 Cir., 1960, 278 F.2d 72, 76. While it was shown that in most instances the dual system of attendance areas resulted in children, both white and colored, being assigned to elementary schools nearest their homes, this does not remove the constitutional barrier against the maintenance of dual attendance areas, and the plaintiffs are entitled to have such dual attendance areas abolished.

■ Section 115–177, General Statutes of North Carolina, confers upon school boards the right to make assignments of pupils in various ways. One of the prescribed ways is to give "notice of assignment of groups or categories of pupils by publication at least two times in some newspaper having general circulation in the administrative unit." The defendant Board technically complied with this statute by giving notice of initial assignments by publishing a notice two times in a Durham newspaper, but the publications were so late as to make it practically impossible for pupils desiring reassignment to pursue their administrative remedies prior to the opening of school. Whether these late publications were through inadvertence or by design makes little difference. The fact remains that school boards are required to reasonably administer the assignment statutes if pupils are to be required to exhaust their administrative remedies under these statutes before applying to the courts for relief.

■ Another serious infirmity in the administration of the law relating to the enrollment and assignment of pupils by the defendant Board has been the failure of the Board to adopt any criteria or standards for considering applications for reassignment, and the failure of the Board to apply such criteria or standards equally to whites and Negroes in the same situation. The courts have uniformly approved residence and academic preparedness as appropriate criteria for considering applications for transfer. A variety of other criteria would undoubtedly be appropriate in given situations, so long as such criteria are not used in such a way as to deprive individuals of their constitutional rights. Jones v. School Board of City of Alexandria, Virginia, 4 Cir., 1960, 278 F.2d 72; Dodson v. School Board of City of Charlottesville, 4 Cir., 1961, 289 F.2d 439; Shuttleworth v. Birmingham Board of Education, D.C., 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

On the other hand, the defendant Board has been confronted with many perplexing problems. Both high schools have been badly overcrowded. The same is true of all the junior high schools, except Brogden Junior High School. Many of the elementary schools, both white and

colored, have also been taxed beyond their capacity to adequately care for the children enrolled. These overcrowded conditions have been somewhat aggravated by other areas being annexed to the Durham School Administrative Unit within the past several months. An enlargement program is under way at both high schools, and it is anticipated that this work will be completed by the commencement of the 1961–1962 school term. Other buildings are either contemplated or under construction. It should also be emphasized that the defendant Board has made a significant and good faith start toward desegregating the schools in its administrative unit by integrating the high and junior high schools at the commencement of the 1959–1960 school term, and continuing and enlarging this program during the 1960–1961 school term.

Having pointed out the several infirmities in the administration of the laws relating to the enrollment, assignment and transfer of pupils by the defendant Board, and the many problems confronting the Board which made a fair administration of those laws difficult, there still remains the question as to the type of relief that should be afforded those plaintiffs who have exhausted their administrative remedies. Each of the plaintiffs were, without question, entitled to have their applications considered on their individual merits. The record clearly demonstrates that this was not done. All elementary students were denied reassignment by reason of a predetermined policy of the board not to integrate elementary schools. The record is not clear as to why applicants for transfer to junior high and high schools were denied. If there had been a scrupulous observance of the individual constitutional rights of the minor plaintiffs, many of them would have undoubtedly been entitled to a transfer. At the same time, by applying criteria and standards that have received judicial approval, the board would have likely been justified in denying many of the applications.

In considering the number of children attending the Durham public schools, both whites and Negroes, the overcrowded conditions in many of the schools, the several pending programs under way to alleviate some of these crowded conditions, the fact that most elementary children have been assigned to elementary schools nearest their home, the fact that applications were not considered on their individual merits according to criteria and standards applicable to white and Negro children alike, and other relevant factors, it is concluded that the most equitable solution to the problem is to require the defendant Board to give separate, individual consideration to the application of each of the minor plaintiffs who have exhausted their administrative remedies, and then report to the court the action taken on each application. The court will thereafter enter such further orders as might be deemed appropriate.

## Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The minor plaintiffs who attended either of the board hearings, or who were represented by one of their parents, or persons standing in *loco parentis*, (Findings of Fact Nos. 31 and 32) adequately exhausted their administrative remedies prior to the commencement of these actions, and are, therefore, entitled to be admitted to a school of their choice without regard to race or color.

3. The minor plaintiffs who did not attend either of the board hearings, or who were not represented by one of their parents, or persons standing in *loco parentis*, did not exhaust their administrative remedies prior to the commencement of these actions, and are, therefore, entitled to no relief.

4. These actions should not be considered as class actions, but rather actions by multiple plaintiffs seeking to enforce their individual constitutional rights.

The applications of each of the minor plaintiffs who exhausted their administrative remedies prior to the commencement of these actions are remanded to

the defendant, Durham City Board of Education, with the following directions:

(a) Within ten days from the date hereof, the defendant Board shall meet and give separate consideration to the application for reassignment filed on behalf of each of the minor plaintiffs who exhausted their administrative remedies prior to the commencement of these actions. If additional information is desired of any of the minor plaintiffs or their parents, or persons standing in *loco parentis*, notice thereof, particularizing the exact information desired, shall immediately be furnished by registered mail, and each of the minor plaintiffs, or their parents, or persons standing in *loco parentis*, shall furnish such additional information within a period of five days thereafter.

(b) Within twenty-five days from the date hereof, the defendant Board shall render its decision with respect to each of said applications. Each decision shall be based on definite criteria and standards applicable to white and Negro children alike.

(c) Within thirty days from the date hereof, the defendant Board shall file with the court a report showing the action taken with respect to each of said applications. In each instance where the application is denied, the reason therefor shall be listed. Additionally, the board shall report to the court the criteria or standards used in considering the applications, any action it has taken with reference to the future use of dual attendance area maps, and any action taken with reference to notifying pupils and parents of initial assignments.

(d) At the time the report is filed with the court, the parents of each of said plaintiffs shall also be notified of the action taken by the board.

These cases will be retained on the docket for such future action as may be deemed necessary or appropriate. In the event any of said minor plaintiffs are dis-

satisfied with the action of the defendant Board, and a hearing by the court is desired, application therefor shall be filed with the court within thirty days from the date notice is given of the action taken by the Board.