Warren H. WHEELER, a Minor, by J. H. Wheeler, his father and next friend, et al., Plaintiffs,

v.

DURHAM CITY BOARD OF EDUCATION, a body politic in Durham County, North Carolina, Defendant.

C. C. SPAULDING, III, a Minor, by C. C. Spaulding, Jr., his father and next friend, et al., Plaintiffs,

v.

DURHAM CITY BOARD OF EDUCATION, a body politic in Durham County, North Carolina, Defendant.

Nos. C-54-D-60 and C-116-D-60.

United States District Court
M. D. North Carolina,
Durham Division.

April 11, 1962.

Conrad O. Pearson, M. Hugh Thompson, William A. Marsh, Jr., F. B. McKissick and J. H. Wheeler, Durham, N. C., and Jack Greenberg, James M. Nabrit, III, and Derrick A. Bell, New York City, for plaintiffs.

Spears, Spears & Powe, Durham, N. C., for defendant.

STANLEY, Chief Judge.

In an opinion filed in these consolidated cases on July 20, 1961, it was found that certain of the minor plaintiffs had not adequately exhausted their administrative remedies under state law prior to the commencement of the actions, and were entitled to no relief. It was further found that certain other minor plaintiffs had adequately exhausted their administrative remedies prior to the institution of the actions, and were entitled to be admitted to the schools of their choice without regard to race or color.

With respect to these latter minor plaintiffs, the cases were remanded to the defendant Board with direction to again give separate and individual consideration to each application for reassignment, and file a report with the court showing the action taken. In case of any application denied, the Board was directed to give the reasons therefor. Additionally, the defendant Board was directed to report to the court the criteria or standard used in considering each application, any action taken with reference to the future use of dual attendance area maps, and any action taken with reference to notifying pupils and parents of initial assignments with respect to each school year. Any minor plaintiff dissatisfied with the action of the Board was given a specified time within which to file application with the court for a hearing. Wheeler v. Durham City Board of Education, 196 F.Supp. 71 (M.D.N.C., 1961).

On August 21, 1961, the defendant Board filed its report. On September 18, 1961, the minor plaintiffs who had not been assigned in accordance with their requests, filed objections to the report and requested the court to schedule a hearing to consider and determine the issues presented by the report and the objections thereto.

At a conference with the court on October 11, 1961, counsel stated that plaintiffs desired to proceed by way of discovery rather than by court hearing. It was then agreed that the parties would have a specified time within which to resort to any of the discovery procedures provided for by the Federal Rules of Civil Procedure, and a specified time thereafter in which to file requests for additional findings of fact, and conclusions of law, and briefs.

After considering the report of the defendant Board, the objections thereto, the additional exhibits and depositions filed, the requests of the plaintiffs and the defendant for additional findings of fact and conclusions of law, and briefs of the parties, the following additional findings of fact and conclusions of law are made and filed herein:

ADDITIONAL FINDINGS OF FACT

1. At the end of the 1960–61 school year, the defendant Board made individual assignments for the 1961–62 school year on the report card of each pupil actively enrolled in the Durham City Schools, and this practice will be continued in the future.

2. On July 27, 1961, the defendant Board adopted the following resolution and motion:

"BE IT RESOLVED:

"That the future use of dual attendance area maps be discontinued, effective immediately."

At the same meeting the following motion was adopted:

"On motion by Mr. Rhinehart, seconded by Mr. Harris, the Superintendent was authorized and directed to make a thorough study of attendance at various schools in the City School district as soon as feasible, and to recommend to the Board the establishment of attendance areas for each school."

3. At the meeting held on July 27, 1961, the defendant Board, after discussing the criteria and standards to be used in the future assignment and enrollment of pupils, and applications for

reassignment, also adopted the following resolution:

"BE IT RESOLVED:

"That in the assignment and enrollment of pupils under and pursuant to the provisions of Section 115-176 of the General Statutes of North Carolina, and in the consideration of applications for reassignment under and pursuant to Section 115-178 of the General Statutes of North Carolina, the following criteria and standards shall be used in the future:

"(1) The relation of residence location of the pupils to the school to which the pupil will be assigned or seeks reassignment to another school;

"(2) The proper and most effective utilization of the physical facilities available and the teacher load in the school as well as the total enrollment in the school;

"(3) Academic preparedness and past achievement of the pupil;

"(4) Factors involving the health and well-being of the pupil;

"(5) Physically handicapped pupils;

"(6) Bona fide residence in the administrative school unit;

"(7) Morals, conduct, deportment and attendance record of pupil seeking assignment or reassignment; and

"(8) Efficient administration of the schools so as to provide for the effective instruction, health, safety and general welfare of the pupil.

"At any hearing on an appeal for reassignment of pupil, unless the pupil or one of his or her parents or a person standing in loco parentis is present in person, the appeal will not be considered, and it shall be conclusively presumed to have been abandoned and withdrawn."

4. At meetings held on July 27 and July 31, 1961, the defendant Board gave separate and individual consideration to the applications for reassignment of each of the minor plaintiffs who had been found to have adequately exhausted their administrative remedies under state law prior to the institution of these actions.

5. On August 21, 1961, the defendant Board filed with the court a report showing the adoption of the motion and resolutions referred to above, and the action taken by the Board on each application considered. Of the 133 applications considered, these being the minor plaintiffs named in Findings of Fact Nos. 31 and 32 in the opinion previously filed, 8 minor plaintiffs were reassigned to the schools of their choice and the balance were denied reassignment.

6. Various reasons were given by the defendant Board for denying the 125 applications for reassignment. Many were denied on the ground that the minor plaintiffs lived closer to the all-Negro schools they were then attending than the predominantly white schools they were seeking to enter. In some instances the difference was as much as 4 miles. Some applications were denied because the pupil lived approximately the same distance from the two schools. Several applications were denied because of the poor academic preparedness and poor achievement record of the applicant, and still others were denied because of the overcrowded conditions in the school to which transfer was sought. In a few instances, the applicants had either dropped out of school or had graduated.

7. The defendant Board has represented to the court that in considering each of the applications for reassignment, it considered the reasons given for requesting reassignment and applied the standards and criteria set out in the resolution adopted July 27, 1961, all without regard to the race of the applicant.

8. At the present time, there are a total of fifteen Negro pupils attending Durham City Schools with white students. Some of these Negro pupils attend the Durham High School, one attends the Fuller Elementary School, and

others are divided between Brogden Junior High School and Carr Junior High School.

9. The overcrowded conditions in many of the Durham City Schools still prevail. The additional classrooms for Durham High School and Hillside High School, and the new building for Lakewood Elementary School, will not be available for occupancy until sometime during the late spring of 1962, or the commencement of the 1962–63 school year. For example, as of October 31, 1961, Durham High School was 18.3 per cent overcrowded, and Hillside High School was 18.1 per cent overcrowded. All of the junior high schools, except Brogden Junior High School, are overcrowded to some extent.

10. The defendant Board has not made any material change in its previous practice with respect to the initial assignments of first grade students, or in the handling of applications for reassignment because of change of residence, or in the initial assignments of elementary school graduates to junior high schools and junior high school graduates to senior high schools. Under the present arrangement, first grade Negro pupils are initially assigned to all-Negro elementary schools, which generally are the elementary schools nearest their homes; all Negro pupils graduating from elementary schools are initially assigned to Whitted Junior High School, which is attended solely by Negro students; and all Negro students graduating from the Whitted Junior High School are initially assigned to the Hillside High School. Some of the Negro students initially assigned to the Whitted Junior High School undoubtedly live nearer one of the junior high schools attended by white students, and some of the Negro students initially assigned to the Hillside High School undoubtedly live nearer Durham High School.

11. The criteria and standards adopted by the defendant Board on July 27, 1961, were used for the first time in considering the applications for reassignment filed on behalf of the minor plaintiffs who were found to have exhausted their administrative remedies prior to the institution of these actions. However, as earlier noted, the defendant Board has certified that these criteria and standards were and are used in considering all applications for reassignment without regard to the race of the applicant.

12. The defendant Board has not yet completed the map showing new attendance areas for pupils attending the Durham City Schools. It is anticipated that this map will be completed by the commencement of the 1962–63 school year.

## DISCUSSION

As stated in the earlier opinion,[1] the applications for reassignment filed on behalf of the minor plaintiffs in both cases give little information, other than the desire to attend an integrated school, as to why reassignment is desired. Actually, the 125 minor plaintiffs who exhausted their administrative remedies without being transferred to another school are still not seeking reassignment to any particular school, and do not even request that a finding be made in regard thereto. All that is being sought is a declaration by the court that the Durham City Schools are being operated on a racially discriminatory basis, and injunctive relief. This is true notwithstanding the holding of this court in its earlier opinion that these actions should not be considered as class actions, but rather actions by multiple plaintiffs seeking to enforce their individual constitutional rights.

The court offered to afford a prompt hearing to any minor plaintiff who was dissatisfied with the action of the defendant Board. However, rather than seek an adjudication of their rights as individuals, the plaintiffs were content to rest their case after taking the deposition of the Superintendent of the Durham City Schools, which deals mainly with the practices of the defendant Board

1. Wheeler v. Durham City Board of Education, 196 F.Supp. 71 (M.D.N.C.1961).

with respect to the initial assignments of first grade students, the handling of applications for reassignment because of change of residence, and the initial assignments of elementary school graduates to junior high schools and junior high school graduates to senior high schools. Information given in the report submitted by the defendant Board with respect to the relative distances the minor plaintiffs live from the schools they are now attending and the schools they are seeking to enter, the academic preparedness and achievement records of the minor plaintiffs, the overcrowded conditions of the various schools in the Durham School System, and other pertinent factors, stand unchallenged. Actually, as earlier noted, upon their theory of the case, the plaintiffs do not consider these factors to be of any importance. They simply want nothing more or less than a general order of desegregation, and in seeking such an order they completely ignore every Federal Court decision construing the North Carolina Assignment and Enrollment of Pupils Act, G.S. § 115–176 et seq. This is borne out by the fact that none of these decisions are cited by the plaintiffs, and indeed none could have been cited, in support of their position.

It has been repeatedly held that the constitutional rights of plaintiffs in suits of this type must be asserted as individuals, not as a class or group. Carson v. Board of Education of McDowell County, 4 Cir., 227 F.2d 789 (1955); Carson v. Warlick, 4 Cir., 238 F.2d 724 (1956), cert. den. 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664; Covington v. Edwards, 165 F.Supp. 957 (M.D.N.C.1958), affirmed 4 Cir., 264 F.2d 780 (1959), cert. den. 361 U.S. 840, 80 S.Ct. 78, 4 L.Ed.2d 79; Holt v. Raleigh City Board of Education, 164 F.Supp. 853 (E.D.N.C.1958), affirmed 4 Cir., 265 F.2d 95 (1959), cert. den. 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63 (1959); McKissick v. Durham City Board of Education, 176 F.Supp. 3 (M.D. N.C.1959). But these cases also hold that multiple plaintiffs may join in the same suit, as was done here.

It should again be emphasized that we are not dealing with a situation where a school board has a fixed policy of maintaining a totally segregated school system. The defendant Board has assigned Negro children to the Durham High School, Brogden Junior High School, Carr Junior High School, and Fuller Elementary School, all being schools previously attended solely by white students. These assignments have been made voluntarily, and without the compulsion of a court order. The dual attendance area maps, and the assignment of pupils shortly before the commencement of each school year, practices previously condemned by the court, have been eliminated. Standards and criteria which are unobjectionable on their face have been adopted to guide the school Board in the handling of all future applications for reassignment. The school Board has represented to the court that these standards and criteria will be applied without regard to the race of the applicant. Until it can be demonstrated that this representation is false, there is no ground for complaint.

It is likely that the court would have disagreed with the defendant Board with respect to the right of some of the minor plaintiffs to be transferred to another school, but the plaintiffs have steadfastly refused to give the court an opportunity to make such a determination. This court has never condoned dilatory tactics on the part of school boards or other public agencies with respect to the constitutional rights of citizens, but the fact still remains that such citizens must want their rights protected before courts are justified in intervening.

The law applicable to the factual situation here presented is well stated by the Court of Appeals for this Circuit in Covington v. Edwards, 4 Cir., 264 F.2d 780, 783 (1959), cert. den. 361 U.S. 840, 80 S.Ct. 78, 4 L.Ed.2d 79, as follows:

"We are advertent to the circumstances upon which the plaintiffs rest their case, namely, that the County Board has taken no steps to

put an end to the planned segregation of the pupils in the public schools of the county but, on the contrary, in 1955 and subsequent years, resolved that the practices of enrollment and assignment of pupils for the ensuing year should be similar to those in use in the current year. If there were no remedy for such inaction, the federal court might well make use of its injunctive power to enjoin the violation of the constitutional rights of the plaintiffs but, as we have seen, the State statutes give to the parents of any child dissatisfied with the school to which he is assigned the right to make application for a transfer and the right to be heard on the question by the Board. If after the hearing and final decision he is not satisfied, and can show that he has been discriminated against because of his race, he may then apply to the federal court for relief. In the pending case, however, that course was not taken, although it was clearly outlined in our two prior decisions, and the decision of the District Court in dismissing the case was therefore correct. This conclusion does not mean that there must be a separate suit for each child on whose behalf it is claimed that an application for reassignment has been improperly denied. There can be no objection to the joining of a number of applicants in the same suit as has been done in other cases. The County Board of Education, however, is entitled under the North Carolina statute to consider each application on its individual merits and if this is done without unnecessary delay and with scrupulous observance of individual constitutional rights, there will be no just cause for complaint."

Since the minor plaintiffs have clearly demonstrated that they are not interested in a protection of their individual rights under the Constitution of the United States, and do not desire that their individual rights be determined and enforced by this court, the court is left no alternative other than to dismiss the actions.

## CONCLUSIONS OF LAW

1. The minor plaintiffs are not entitled to the relief prayed for.

2. The complaints in each action should be dismissed.

A judgment will be entered accordingly.