Warren H. WHEELER et al., and C. C. Spaulding et al., Appellants,

v.

The DURHAM CITY BOARD OF EDUCATION et al., Appellees.

Warren H. WHEELER et al., and C. C. Spaulding et al., Appellees,

v.

The DURHAM CITY BOARD OF EDUCATION et al., Appellants.

Nos. 77–1835, 77–1836.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1978.

Decided Oct. 2, 1978.

Jonathan Wallas, Charlotte, N. C. (J. Le-Vonne Chambers, Louis L. Lesesne, Jr., Chambers, Stein, Ferguson & Becton, Charlotte, N. C., Jack Greenberg and James Nabrit, New York City, on brief), for appellants in 77-1835 and appellees in 77-1836.

Marshall T. Spears, Jr., Durham, N. C. (Spears, Barnes & Baker, Durham, N. C., on brief), for appellees in 77-1835 and appellants in 77-1836.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and CHAPMAN,* District Judge.

WINTER, Circuit Judge:

The award of counsel fees in a school desegregation case is the subject of these cross-appeals. While the actual fee has not been fixed, the district court has ruled with respect to the basis on which the award will be made. Plaintiffs assert error on the part of the district court for failing to make an award for services rendered prior to July 1, 1972, and for excluding related litigation expenses in its computation of the fee award. Defendant asserts error in the inclusion of fees for services rendered after July 1, 1972, which were directed to issues upon which plaintiffs did not prevail.

We conclude that the district court, except possibly in a minor particular, was correct in ruling that it would not award fees for services rendered prior to July 1, 1972, but that it was in error in ruling that it would not make an allowance for related litigation expenses. We think also that the fee awarded plaintiffs should be in an amount which reflects that some of the services were rendered with respect to issues on which plaintiffs did not prevail. We therefore affirm in part and reverse and remand in part.

I.

The accomplishment of a unitary system of schools in Durham and Durham County occurred in several discrete steps correlated with evolving notions of how to effect compliance with *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The suits—two against the Durham City Board of Education and the third against the Durham County Board of Education—were filed in 1960, and later consolidated.

The first step of the desegregation process was an attack on the city's policy of maintaining dual attendance zones and assigning students on the basis of race, coupled with a no-transfer policy. In its first decision, the district court required the school board to consider each transfer request individually and to state its reasons if the request was denied. Jurisdiction of the district court was retained. *Wheeler v. Durham City Board of Education*, 196 F.Supp. 71 (M.D.N.C.1961). When the district court's order resulted in the grant of only 8 out of 133 applications for transfer, plaintiffs sought further relief. It was denied, *Wheeler v. Durham City Board of Education*, 210 F.Supp. 839 (M.D.N.C.1962); but, on appeal, we reversed, declaring that the dual attendance zones were invalid and directing the preparation of a plan to end existing discrimination. An interim plan followed, which we approved in *Wheeler v. Durham City Board of Education*, 326 F.2d 759 (4 Cir. 1964), but we disapproved a purported permanent plan and suggested an unrestricted freedom of choice plan in *Wheeler v. Durham City Board of Education*, 346 F.2d 768 (4 Cir. 1965). A freedom of choice plan was adopted and approved by the district court in *Wheeler v. Durham City Board of Education*, 249 F.Supp. 145 (M.D.N.C.1966). We, too, approved it in *Wheeler v. Durham City Board of Education*, 363 F.2d 738 (4 Cir. 1966), although we also directed the employment and assignment of teachers on a non-racial basis.

The litigation then entered a period of repose, with the expectation, at least on the part of some, that the freedom of choice

* Robert F. Chapman, United States District Judge for the District of South Carolina, sitting by designation.

plan would provide an adequate remedy. As with all other desegregation cases, however, jurisdiction of the district court continued to be retained.

The second stage of the litigation followed the Supreme Court's decisions in *Green v. School Board of New Kent County*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), and *Alexander v. Holmes County Board of Education*, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969). *Green* held that freedom of choice plans were unacceptable where other methods promised "speedier and more effective conversion to a unitary, non-racial school system." 391 U.S. at 441, 88 S.Ct. at 1696. *Alexander* declared that the "obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary schools." 396 U.S. at 20, 90 S.Ct. at 29.

After successfully challenging the freedom of choice plan for the Durham County schools, *Nesbit v. Statesville City Board of Education*, 418 F.2d 1040 (4 Cir. 1969), plaintiffs filed a motion for further relief with respect to the city schools. Urging that the freedom of choice plan had proved ineffective in desegregating the Durham city system, they argued that *Green* and *Alexander* mandated the adoption of a plan that would immediately establish a unitary school system. Plaintiffs prevailed in their contentions and on July 31, 1970, the district court ordered the adoption of a plan to create a unitary system through the use of newly-drawn geographical attendance zones. No appeal was taken from this order, or from the finding that the plan would provide a unitary system, and again the litigation lapsed into a period of relative

quiescence. The district court, of course, retained jurisdiction.

On July 27, 1972, the plaintiffs filed yet another motion for further relief, this time charging that the plan adopted in July, 1970 had not resulted in a unitary system. Although plaintiffs included a request for a revised plan in their plea for relief, their primary contention was that a true unitary system could be achieved only by the merger of the city and county schools, or, at the very least, the extension of the city school district to match the city limits. The district court denied the request for inter-district relief on the authority of *Bradley v. School Board of City of Richmond*, 462 F.2d 1058 (4 Cir. 1972), *aff'd by an equally divided court*, 412 U.S. 92, 93 S.Ct. 1952, 36 L.Ed.2d 771 (1973).[1] As for the contention that the 1970 plan had been ineffective, the district court found that the continuing racial disparities at particular schools were the result of demographic changes since 1970 rather than being vestiges of the prior discriminatory system. *Wheeler v. Durham City Board of Education*, 379 F.Supp. 1352 (M.D.N.C.1974). On appeal, we reversed, holding that the school assignments of the 1970 plan were not adequate to establish a unitary system. 521 F.2d 1136 (4 Cir. 1975). A new plan for achieving a unitary system in the city has since been adopted that apparently satisfies all parties.

After prevailing in their attempts to modify the 1970 order, plaintiffs moved for an award of attorneys' fees for word done since the initiation of litigation in 1960.[2] They argued that a fee award was authorized by either § 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617,[3] or by the

1. Plaintiffs conceded that the pupil assignment plan instituted in 1970 had achieved a unitary school system in the county. The denial of inter-district relief therefore excused the county from any further liability. The judgment in favor of the county board was not appealed.

2. Plaintiffs sought fees from both the city and the county boards. The court ruled that no fees could be levied against the county board because plaintiffs had not prevailed in their claims against it, the request for inter-district relief having been denied. This ruling was not appealed.

3. Section 1617 reads:

   Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were

Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988.[4]

The district court held that plaintiffs were entitled to fees from the city board under § 1617, but only for services rendered since July 1, 1972, the effective date of the Act. Although conceding that § 1617 authorized fees in cases pending on its effective date, the district court concluded that, as of July 1, 1972, there was not pending before it "a live issue of claimed entitlement to attorneys' fees in favor of the plaintiffs," and therefore this litigation could not reasonably be considered to have been pending, for purposes of § 1617, on that date. Moreover, to allow attorneys' fees back to 1960 would, in the court's opinion, be unfair and unjust to the defendant which could not have foreseen its potential liability for attorneys' fees and which had made a good faith effort during the course of the litigation to comply with the law in effect at the time. The court also noted that, assuming § 1988 offered a basis for a fee award independent of the authority granted by § 1617, the same reasoning limited recovery under § 1988.

Plaintiffs had asked that, in the computation of a fee award, provision be made for litigation expenses—travel, photocopying, telephone bills, demographic studies, additional secretarial expenses and consultant fees and expenses—as well as for the attorneys' actual services. The district court declined to include these items, ruling that the language of § 1617, which authorizes an award of reasonable attorneys' fees, did not evidence a congressional intent to permit reimbursement of related litigation expenses. Reading the statute to use the

term attorneys' fees in the strict sense of compensation for an attorney's own services, the district court concluded that a more expansive view of the expenses covered would require a congressional amendment.

## II.

■ We consider first plaintiffs' contention that the award of attorneys' fees should include the services rendered since the initiation of litigation in 1960. At the outset, we think that it makes no difference whether plaintiffs base their claim for attorneys' fees on 20 U.S.C. § 1617 or on 42 U.S.C. § 1988. Both statutes, in practically identical language, provide for an award of a reasonable attorney's fee to the prevailing party. Both have been construed to authorize fee awards in cases pending at the date of enactment. *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (§ 1617); *Gore v. Turner*, 563 F.2d 159 (5 Cir. 1977) (§ 1988). Because § 1617 specifically addresses the award of attorneys' fees in school desegregation cases, precisely the issue here, we address ourselves solely to the interpretation of that statute. But what we say about § 1617 applies equally to § 1988, for there is no indication that Congress intended the language of the two statutes to be interpreted differently.

■ The issue posed by this case can be stated simply: was this litigation *pending* on the effective date of § 1617 within the rationale of *Bradley*? This question is largely one of first impression,[5] but *Bradley* is helpful in its resolution.

---

necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**4.** In pertinent part, § 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the

court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**5.** In *Gonzales v. Fairfax-Brewster School, Inc.*, 569 F.2d 1294 (4 Cir. 1978), we held that the attorneys' fees provision of § 1988 was inapplicable to a case which had been decided by the Supreme Court prior to the effective date of that portion of § 1988 and was pending in the district court solely for the assessment of costs in accordance with the Supreme Court's judgment. Indeed, the Supreme Court had affirmed the denial of attorneys' fees under the law prior

In *Bradley*, the issue was whether § 1617 applied "to a situation where the propriety of a fee award was pending resolution on appeal when the statute became law."[6] 416 U.S. at 710, 94 S.Ct. at 2015. Invoking the principle that a court is to apply the law in effect at the time it renders decision, the Court held that § 1617 authorized the award of attorneys' fees where some aspect of a case was still on direct review. Of course *Bradley* differs markedly from the instant case, because in *Bradley* the very issue of attorneys' fees was pending on the effective date of § 1617 which dealt with the subject. Nevertheless, several aspects of *Bradley* are useful to our inquiry in the case at bar.

First, Justice Blackmun's opinion for the unanimous court attempts tentative definitions of terms relevant to this case. A pending case, it suggests, is one that has not yet been reduced to a final judgment. 416 U.S. at 710–11, 94 S.Ct. 2006. A final judgment is defined, in turn, as one where "'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Id.* at 711 n.14, 94 S.Ct. at 2016. During the course of the instant litigation, as recounted in part I, there were several final judgments. Both in 1966 and in 1970, final orders were entered that purported to decide the rights of the parties, and appeals therefrom were not taken. Each of these orders was later disturbed by a motion seeking further relief, but in the interim no issue was pending in the sense that *Bradley* uses that term.

In discussing the timeliness of the request for fees, the Court in *Bradley* noted:

> Since most school cases can be expected to involve relief of an injunctive nature that must prove its efficacy only over a period of time and often with frequent modifications, many final orders may issue in the course of the litigation. To delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary evidenced by the passage of § 718 [§ 1617].

416 U.S. at 722–23, 94 S.Ct. at 2022. And a related footnote stated:

> Without wishing affirmatively to construe the statute in detail in the absence of consideration of the issue by the lower courts, we venture to say only that the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees in school desegregation cases.

416 U.S. at 722 n.28, 94 S.Ct. at 2022.

These passages describe a special characteristic of school desegregation cases as they have progressed over the past twenty-four years: although each action has been viewed as a unitary proceeding, typically there have been a series of final orders, followed by motions for further relief paralleling the evolution of remedial law. Cognizant of this pattern, the *Bradley* Court suggested that the phases of a desegregation action were so distinct that attorneys' fees could properly be awarded under § 1617 at the entry of each final order. Here we have the converse, a litigant seeking fees for services dating to the initiation of litigation. But if a stage in the proceeding is final for the purposes of making a contemporaneous award of attorneys' fees, we think that it cannot also be pending so

---

to the amendment of § 1988. While the decision in *Gonzales* is perfectly consistent with the result we reach in the instant case, its rationale was that the district court "had no authority to reopen the case for the consideration of attorneys' fees or to conduct any proceedings except those specifically authorized by the appellate judgment." 569 F.2d at 1297. Here, by contrast, the district court had continuously reserved jurisdiction to modify its judgments from time to time to make them conform

to changed circumstances, both factual and legal.

**6.** Although the *Bradley* litigation had commenced in 1961, the fee award in question there related only to that phase of the litigation commencing with the filing of a motion for further relief in March, 1970. Unlike the instant case, *Bradley* did not involve an attempt to recover fees for work on phases of the litigation that had been reduced to final judgment.

as to justify an award of attorneys' fees years after an order terminating that stage of the proceedings was entered. Of course, the reason why plaintiffs waited so long to assert their claim to fees is obvious. Until the enactment of § 1617 in 1972, attorneys' fees were seldom awarded. Nonetheless, we do not think that § 1617 authorizes an award of attorneys' fees after such a delay.

When § 1617 became effective on July 1, 1972, this case was pending only in the technical sense that jurisdiction to enter such further orders as were necessary and desirable had been retained. There was no certainty, however, that the jurisdiction of the court would ever again be exercised. Indeed, the litigation might have remained inactive for years.

Although the legislative history of § 1617 is silent as to the definition of pending claims, we doubt that Congress intended the availability of attorneys' fees to depend solely on the technical retention of jurisdiction. Absent an expression of contrary congressional intent, we think that the statute should be accommodated to the nature of the litigation to which it applies.

We therefore hold that § 1617 does not authorize attorneys' fees with regard to those phases of the litigation that had been reduced to a final judgment at the time § 1617 became effective.

As we view § 1617, it authorizes an award of attorneys' fees only for services in connection with the phase of the litigation that commenced with the filing of a motion for further relief in July, 1972. Of course, the statute would include services rendered prior to that date in preparation of the motion which was filed. The district court's order, which limits fees to services rendered since July 1, 1972, may be too restrictive. We cannot be certain from this record whether plaintiffs began work on their motion for further relief before July 1, 1972; but if they did, the fee award should compensate them for those services.

### III.

We consider next the computation of the fee award—both plaintiffs claim that the award should include related litigation expenses, and defendant's contention that plaintiffs should not be compensated for services rendered with respect to issues on which plaintiffs did not prevail. We think both contentions have merit. As we shall show, we question whether the issue raised by defendant is truly ripe for adjudication, but we will comment on it nevertheless for the guidance of the district court in computing the actual award.

In determining whether litigation expenses should be recovered as part of attorneys' fees, a distinction should be drawn between taxable costs, authorized under F.R.Civ.P. 54(d), and statutorily authorized attorneys' fees. Rule 54(d) authorizes the awarding of costs to the prevailing party, but it has been interpreted to permit reimbursement of only certain categories of costs. Significantly, under traditional American practice, attorneys' fees were not considered recoverable as an item of taxable costs, and this ban was held also to preclude related litigation expenses. *See* Wright & Miller, Federal Practice and Procedure § 2675 (1973); 6 Moore's Federal Practice ¶ 54.77.

■ Where attorneys' fees are expressly authorized by statute, as in § 1617, Rule 54(d) is no longer relevant. Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses. We hold that it was.

Litigation expenses such as supplemental secretarial costs,[7] copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a

---

7. We do not suggest that every supplemental secretarial cost should be recoverable. Only where an extraordinary need for supplemental services has arisen, either as a result of the complexity of the litigation, unusual time constraints for the preparation and filing of court papers, or other unusual causes, should the cost of such services be recoverable. The district court should require that the necessity for such services be shown before an allowance is made.

**624**

significant role in the ultimate success of litigation as complicated and demanding upon the resources of an attorney's office as that seeking school desegregation. Reimbursement of related litigation expenses would, therefore, plainly further the congressional purpose of encouraging meritorious school desegregation litigation and the related policy of ensuring that those who prevail in such significant social litigation should be fully compensated for their efforts. Indeed, to recount the reasons for including litigation expenses in a fee award is perhaps to state the obvious; for other federal courts have routinely provided for recovery of out-of-pocket expenses in conjunction with fee awards. *E. g. Fairley v. Patterson*, 493 F.2d 598, 607 n.17 (5 Cir. 1974); *Payne v. Travenol Laboratories, Inc.*, 74 F.R.D. 19 (N.D.Miss.1976); *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C.1975); *Bradley v. Richmond School Board*, 53 F.R.D. 28, 43–44 (E.D.Va.1971). Under the circumstances, we think the district court's concern over the absence of specific congressional guidance was groundless.

■ We view differently, however, the fees and expenses of outside, non-legal consultants and experts. Their fees and expenses are traditionally not regarded as attorneys' fees, however essential their services may be to the successful preparation and trial of a complex case. We think that their fees and expenses may not be recovered under the rubric of attorneys' fees under § 1617. We note that in the area of representation for indigents in the criminal context, Congress has specially authorized the payment of such expenses, 18 U.S.C. § 3006A(c), and we deem the silence of Congress in civil rights litigation significant. On this record, we cannot be certain of the nature of plaintiffs' claim for "demographic studies." We think, however, that the district court can properly clarify the claim as reimbursable or not from what we have said about the scope of § 1617.

Defendant's suggestion that plaintiffs will be reimbursed for services directed to issues upon which they did not prevail is grounded upon the district court's declaration that the plaintiffs "are entitled to be paid by the City Board a reasonable attorneys' fee for all services rendered by them in this litigation since July 1, 1972." Defendant contends that it should not be required to pay for all such services because many of those services were directed toward plaintiffs' unsuccessful attempt to secure inter-district relief.

■ As a general proposition, the extent to which the plaintiff has prevailed is a factor to be considered in computing the amount of attorneys' fees awarded in a particular case. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4 Cir. 1978); *Burt v. Abel*, 585 F.2d 613 (4 Cir. 1978). *See also Adams v. Reed*, 567 F.2d 1283, 1288 (5 Cir. 1978); *Williams v. General Foods Corp.*, 492 F.2d 399, 409 (7 Cir. 1974); *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1008 (9 Cir. 1972). It may well be that the district court intended to consider the degree of the plaintiffs' success in fixing the award, for in its memorandum opinion the district court noted that it would determine the amount to be awarded as a reasonable attorney's fee in accordance with the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5 Cir. 1974), which we approved and adopted in *Barber*. One factor mentioned in *Johnson* was: "the amount involved and the results obtained." 488 F.2d at 718. Thus, notwithstanding the district court's statement that the fee would be for all services, it is not clear that the court intended to ignore the plaintiffs' degree of success in setting an award. What we have said should put the matter beyond peradventure of doubt.

*AFFIRMED IN PART; REVERSED IN PART AND REMANDED.*