Celia and Enrique ESPINOZA, et al., Plaintiffs,

v.

HILLWOOD SQUARE MUTUAL ASSOCIATION, et al., Defendants.

Civ. A. No. 81–0303–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Jan. 13, 1982.

Bradley Stetler, Alexandria, Va., Philip G. Sunderland, Robert S. Blacher, Washington, D. C., for plaintiffs.

Brian P. Gettings, Arlington, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

The plaintiffs, Celia and Enrique Espinoza and Vinod Rajpal, move for an award of attorney's fees and costs under 42 U.S.C. § 1988 (1976). On November 2, 1981, the plaintiffs filed a brief requesting attorney's fees of $35,358.75, expenses of $1,573.62, local counsel fees of $1,238.90, and costs of $206.00. The plaintiffs later submitted a supplementary filing seeking an additional $6,402.50 in attorney's fees and $222.71 in expenses. These additional amounts are attributable to preparation of the motion for fees and costs. The total award requested by the plaintiffs is $45,002.48 plus a 15–25% contingency bonus.

## I. FACTUAL BACKGROUND

Defendant Hillwood Square Mutual Association (Hillwood) is a cooperative housing association incorporated in Virginia. It owns a townhouse subdivision in Falls Church, Virginia. The residents of Hillwood's subdivision do not own the townhouses in which they live. They, instead, are members of the association, which in turn owns all of the dwelling units. The association itself pays the subdivision's expenses. It raises the necessary funds by assessing each of its members a pro rata share of the expenses. Defendant Joan Fling has been the manager of Hillwood's subdivision at all times relevant to this case.

In September, 1977, Hillwood adopted a policy of refusing membership to aliens. *See* Minutes of Special Meeting of Board of Directors, Hillwood Square Mutual Association, September 12, 1977, at 1. Celia and Enrique Espinoza, alien residents of the United States, attempted to apply for membership in Hillwood on April 7, 1980. Fling denied them an application. A few days later, Fling again refused to give the Espinozas an application.

Vinod Rajpal, an alien resident of the United States, first attempted to become a member of Hillwood on June 25, 1980. At that time, Fling told him that he could not become a member due to his foreign citizenship. Hillwood subsequently denied membership to Rajpal on three more occasions. These refusals occurred on October 16, 1980, December 10, 1980, and February 12, 1981.

On April 6, 1981, the Espinozas and Rajpal filed a complaint against Hillwood in this court. The plaintiffs asserted that Hillwood's citizenship policy violated both section 1981, 42 U.S.C. § 1981 (1976), and the Fair Housing Act, *id.* §§ 3601–3619. The first and third claims of the complaint

were founded on section 1981. In these counts, the plaintiffs alleged that Hillwood's denial of membership qualified as alienage discrimination. The second and fourth claims were based on the Fair Housing Act. *See id.* § 3604(a). The plaintiffs there asserted that Hillwood's conduct constituted discrimination on the basis of national origin. The complaint concluded by requesting the following forms of relief: (1) declaratory and injunctive relief against Hillwood; (2) actual damages of $100,000; (3) punitive damages of $200,000; and (4) attorney's fees and costs.

On July 31, 1981, the plaintiffs moved under Rule 56(a) for partial summary judgment on their section 1981 claims. *See* Fed.R.Civ.P. 56(a). Hillwood countered with a Rule 12(b)(6) motion to dismiss the plaintiffs' Fair Housing Act claims. *See id.* 12(b)(6). On September 16, 1981, the court issued a memorandum opinion denying these two motions on the ground that material factual issues remained unresolved. *See Espinoza v. Hillwood Square Mutual Association,* 522 F.Supp. 559 (E.D.Va.1981). The court, however, did rule in this opinion that section 1981 prohibits private alienage discrimination. *See id.* at 564. In addition, the court held that the Fair Housing Act proscribes alienage discrimination only if it is part of a scheme to discriminate on the basis of ancestry. *See id.* at 568.

After the court issued its opinion, three significant events occurred. First, on October 9, 1981, Hillwood attempted to open settlement negotiations. The defendant's attorneys claim that they offered to settle the case for $5,000. The plaintiffs deny that this offer was made. They assert that, on October 15, 1981, Hillwood's lawyers mentioned a figure of $2,000 in damages plus $10,000 in attorney's fees. In any case, the plaintiffs rejected this offer. Hillwood contends that the plaintiffs' attorneys later indicated that they would recommend a settlement of $20,000 in damages and $15,000 in attorney's fees. The plaintiffs allege that the figure was $10,000 in damages plus their attorneys' fees to date. Second, Hillwood's board of directors voted to repeal its citizenship policy on October 15, 1981.

Third, the plaintiffs decided before trial to drop their Fair Housing Act claims.

On October 20, 1981, the parties went to trial. The plaintiffs sought emotional, economic, and punitive damages against defendants Hillwood and Fling. Before the case went to the jury, the court dismissed Fling from the case. The jury returned a verdict against Hillwood, but awarded only $500 to each plaintiff. After trial, the plaintiffs filed the motion that is now before the court. The plaintiffs also requested an injunction prohibiting Hillwood from discriminating against aliens in the future. The court has granted this latter motion in the order attached to this opinion.

## II. THE ISSUE OF WHETHER TO AWARD ATTORNEY'S FEES

Section 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" in an action under section 1981. 42 U.S.C. § 1988 (1976). The Fourth Circuit has interpreted this provision so as to constrain narrowly the district court's discretion in deciding whether to award fees. In *Bonnes v. Long,* 599 F.2d 1316 (4th Cir. 1979), the Fourth Circuit held that "[a] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* at 1318 (citations omitted). *See also McManama v. Lukhard,* 616 F.2d 727, 729 (4th Cir. 1980). Thus, the court will award fees in this case if two conditions are met: First, the plaintiffs must be the prevailing party; and, second, there must be no special circumstances that would make the award inequitable.

The Espinozas and Rajpal clearly qualify as the prevailing party in this case. They were successful in obtaining both injunctive relief and nominal emotional damages under section 1981. Despite the fact that the plaintiffs dropped their Fair Housing Act claims before trial, they still were able to establish that Hillwood's citizenship policy was illegal. Under *Wallace v. King,* 650 F.2d 529 (4th Cir. 1981), a plaintiff need

not receive all of the relief that he seeks in order to qualify as the prevailing party. It is only necessary that he be successful on a significant issue in the case. *See id.* at 531. *Accord Familias Unidas v. Briscoe*, 619 F.2d 391, 405–06 (5th Cir. 1980); *Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979). The fact that a plaintiff fails on some claims or receives only nominal damages is irrelevant to the question of whether he has prevailed for the purpose of attorney's fees. *See Wallace v. King*, 650 F.2d at 530–31. *Accord Familias Unidas v. Briscoe*, 619 F.2d at 405–06. As a consequence, the court must hold that the Espinozas and Rajpal are prevailing parties.

The question of whether special circumstances are present in this case is a troublesome one. The courts have construed the special circumstances exception narrowly. The Fourth Circuit has explicitly stated that a plaintiff's ability to pay attorney's fees is not a valid ground for denying an award. *See Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980). *Accord Milwe v. Cavuoto*, 653 F.2d 80, 83 (2d Cir. 1981); *International Society for Krishna Consciousness, Inc. v. Collins*, 609 F.2d 151 (5th Cir. 1980). In addition, the weight of authority holds that a defendant's good faith or lack of scienter does not qualify as a special circumstance. *See, e.g., Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 955 (5th Cir. Unit B 1981); *Love v. Mayor of Cheyenne*, 620 F.2d 235, 236 (10th Cir. 1980); *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978). These restrictions leave this court wondering what factors would justify a refusal to award fees.[1]

■ Despite the narrow view of the special circumstances exception that the courts

have taken, the plaintiffs' entitlement to fees in the present case is still not free from doubt. Several aspects of the case prevent the Espinozas and Rajpal from qualifying as the archetypal civil rights plaintiffs. First, the fact that they had sufficient funds to purchase a membership in Hillwood indicates that they are not destitute. Second, the plaintiffs failed to press for class certification. Thus, they prosecuted the suit for their own benefit, rather than on behalf of a large class. Finally, the plaintiffs sought a monetary award of $300,000. They, therefore, must have expected a substantial pecuniary return from the suit.

The court also notes that Hillwood is not the typical civil rights defendant. The members of the association believed in good faith that their conduct was lawful. The murkiness of the law involved in the case supports this finding. In addition, Hillwood's citizenship policy could not have been an attempt to discriminate on the basis of national origin, because several of the association's members were born in foreign countries.[2] Finally, a large award of fees would impose a substantial hardship on the approximately 160 members of the association. Almost half of the members are elderly or retired persons living on fixed incomes.[3] The appearance of these factors in conjunction indicates to the court that the present case is not a prime candidate for an award of fees. It is entirely possible that Congress did not intend section 1988 to require an award in such circumstances.

The case law provides some support for this proposition. In *Zarcone v. Perry*, 581 F.2d 1039 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), the Second Circuit ruled that:

---

1. The Fourth Circuit has provided only one illustration of the type of situation in which a court may deny fees to a prevailing plaintiff. In *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979), the court noted that special circumstances were present where "the illegal discrimination was incorporated in a profit-sharing and retirement plan that had been adopted when such discrimination was legal, that could not be unilaterally modified by the defendants, and that had been amended before the litigation began." *Id.* at 1318.

2. The Espinozas are Peruvian nationals, while Rajpal is a citizen of India. It is ironic that Hillwood has non-citizen members of both Peruvian and Indian ancestry. These members, of course, would have to pay a pro rata share of any fees awarded by the court.

3. Seventy-one of Hillwood's members are elderly or retired persons living on fixed incomes. The remainder probably fall in the middle-income bracket.

in determining whether attorneys' fees should be awarded . . ., the principal factor to be considered by the trial judge in exercising his discretion is whether a person in the plaintiff's position would have been deterred or inhibited from seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful.

*Id.* at 1044. The Espinozas and Rajpal sought $300,000 in damages. Thus, it seems unlikely that the prospect of paying attorney's fees would have deterred them from bringing the suit. The *Zarcone* court went on to note:

Moreover, appellant was a private attorney general only in an attenuated sense. Although the defendant's conduct was intolerable from the standpoint of the public interest, it is unlikely to recur, and appellant sued on his own behalf for damages to redress an essentially private injury. Finally, contrary to appellant's contention, there is not a sufficient showing in this record that [the defendant] acted in bad faith in defending this suit to justify a remand in this case. In short, an award of attorney's fees in the present case is wholly unnecessary to achieve the purpose of [section 1988].

*Id.* at 1044–45 (footnotes omitted). Although the facts in the present case are less compelling than those in *Zarcone*, this court wonders whether an award of fees to the Espinozas and Rajpal is necessary to effectuate the purposes of section 1988.

Another case that casts doubt on the plaintiff's entitlement to an award of fees is *Concerned Democrats of Florida v. Reno*, 493 F.Supp. 660 (S.D.Fla.1980). In that decision, the district court refused to award fees to a prevailing plaintiff:

In considering the facts and circumstances of this case, the court is still of the opinion that an award of attorney's fees is inappropriate. If the attorney's fee statute is to mean anything resembling what its words indicate, and if the judicially created exception "special circumstances" is to have any life at all,

then the court must deny plaintiff's motion in this case.

\* \* \* \* \* \*

The Fifth Circuit has rejected (1) good faith on the part of defendants; (2) a finding of unintentional discrimination; (3) plaintiff's financial ability to pay counsel fees; (4) defendant's good-faith belief that a challenged statute is valid; and (5) that the burden of a fee award will fall on the taxpayers, as insufficient to constitute special circumstances rendering an award of attorney's fees unjust. However, this case combines all five of these factors with the added ingredient of a plaintiff who is a partisan, political organization. Added together they rise to the level of "special circumstances".

*Id.* at 663–64. The factors listed in *Concerned Democrats* are not all present in the current case. In particular, the court notes that the Espinozas and Rajpal are not a well-funded political organization. There, nonetheless, are a number of similarities between the two cases. Perhaps the most important resemblance is the sheer accumulation in both cases of factors favoring denial of an award.

Despite the confluence of several factors that weigh against a fee award, the court still must hold that the Espinozas and Rajpal are entitled to reimbursement for reasonable attorney's fees. This result is dictated by the severe restrictions that the Fourth Circuit has placed on the court's power to deny an award. In addition, however, the court believes that it would be equitable for the plaintiffs to recover a portion of their fees. The plaintiffs were able to establish that section 1981 applies to private alienage discrimination. This clarification of the law will provide benefit to both the public and the judiciary. Thus, some aspects of the case do favor an award. The presence of these aspects helps to justify the court's ruling that the plaintiffs have crossed section 1988's entitlement threshold.

### III. COMPUTATION OF THE FEES AWARD

The Fourth Circuit first set out the proper method for calculating a fees award un-

der section 1988 in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). The opinion in that case approves a list of twelve factors that a district court should consider in computing fees. The determinative factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

577 F.2d at 226 n.28. The *Barber* court gave no indication of how to structure a computation based on these factors.

■ The Fourth Circuit refined its standard for calculating fees in *Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981). The *Anderson* court ruled that the district court should:

> first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially [*Barber*] factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award.

*Id.* at 249. This court, therefore, must begin its computations by calculating the number of hours "reasonably expended" by the plaintiffs' attorneys. The court next will determine the customary hourly rate for each attorney. Multiplying these rates by the hours reasonably expended by each attorney and then summing the products will yield a "lodestar" figure. Finally, the court will adjust the lodestar based on the remaining *Barber* factors.

A. The Number of Hours Reasonably Expended

■ Calculating the number of hours reasonably expended is the most difficult part of the fees computation. *Anderson* indicates that the court should not simply accept as reasonable the number of hours reported by counsel:

> Of course, making this time-rate calculation is not a mechanical exercise. The judge must determine, for example, what hours may reasonably be included. When several firms are involved, the issue of duplication can be especially difficult.

*Id. Accord Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc); *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978). The Fourth Circuit, however, has not delineated the criteria for determining whether the hours claimed by an attorney are reasonable. One criterion that *Anderson* does mention is duplication of one attorney's work by another. Two other possible adjustments are a reduction for unproductive time and deletion of hours spent on issues upon which the plaintiffs did not prevail. *See Copeland v. Marshall*, 641 F.2d at 891–92. The court will apply these three criteria in making the time calculation for the lodestar.

Counsel for the Espinozas and Rajpal have submitted a detailed statement outlining the number of hours spent by each of the plaintiffs' attorneys. This statement indicates that Philip G. Sunderland spent 111.00 hours on the case, Robert S. Blacher 386.75 hours, D. Klibaner 5.50 hours, and an unnamed paralegal 28.50 hours. The hours reported seem both accurate and well-documented. In any case, the defendants have not disputed the correctness of these figures. The court, therefore, will treat the

plaintiffs' statement as an accurate account of the hours actually spent by their attorneys.

The first criterion for adjusting the hours actually spent does not produce any reduction in this case. The court does not find any evidence of work duplication. The plaintiffs' attorneys are all associated with the same firm. As a consequence, they were able to allocate the work among themselves in an efficient manner.

■ The second criterion that the court will consider is the extent to which the plaintiffs' attorneys spent their time on issues upon which they did not prevail. There are two divergent lines of cases that deal with a district court's power to use this criterion as a basis for reducing an award. One group of decisions holds that an attorney should not receive compensation for hours expended on an issue or claim upon which his client did not ultimately prevail. *See Copeland v. Marshall*, 641 F.2d 880, 891–92 (D.C.Cir.1980)(en banc); *Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir. 1980); *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978); *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978). A second set of cases takes the view that the district court must compensate a prevailing party's attorney for hours spent on unsuccessful claims, unless the positions asserted were clearly meritless. *See Gurule v. Wilson*, 635 F.2d 782, 793 (10th Cir. 1980); *Seattle School District No. 1 v. Washington*, 633 F.2d 1338, 1349–50 (9th Cir. 1980); *Sherkow v. Wisconsin*, 630 F.2d 498, 504–05 (7th Cir. 1980); *Northcross v. Board of Education*, 611 F.2d 624, 636 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Brown v. Bathke*, 588 F.2d 634, 637 (8th Cir. 1978). The Fourth Circuit has not explicitly ruled on this issue. It, however, has stated that "the extent to which the plaintiff has prevailed is a factor to be considered in computing the amount of attorneys' fees awarded in a particular case." *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 624 (4th Cir. 1978). *See also Frith v. Eastern Air Lines, Inc.*, 611 F.2d 950, 951 (4th Cir. 1979). Thus, the court will follow the line of cases that denies compensation for work on unsuccessful claims.

The Espinozas and Rajpal did not prevail on all of the issues and claims in their suit. First, they did not succeed on their Fair Housing Act claims. The plaintiffs dropped these claims before trial. In addition, the record demonstrates that Hillwood was not discriminating on the basis of national origin. Second, the plaintiffs did not prevail on any of their claims against defendant Fling. The court dismissed her from the suit before the case went to the jury. Third, the plaintiffs were unsuccessful on the issues of economic and punitive damages. The plaintiffs, however, did prevail on the issues of liability, injunctive relief, and emotional damages under section 1981.

The court has examined the charts submitted by the plaintiffs that divide the hours actually spent into the relevant issue categories. The court finds that this classification of attorney hours is both fair and accurate. The court holds that the following hours were necessary for prosecution of the liability and injunctive relief issues: 251.75 hours by Blacher, 63.00 hours by Sunderland, 5.50 hours by Klibaner, and 14.25 hours by an unnamed paralegal. In addition, Blacher spent 27.06 hours and Sunderland 15.06 hours pursuing the emotional damages issue. The court deletes the time expended on the other issues, because these hours were not necessary for prosecuting the claims on which the plaintiffs prevailed. In a few instances, the plaintiffs' preparations for successful and unsuccessful claims overlapped. The court has given the plaintiffs credit for these overlapping hours. *See Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones*, —— U.S. ——, 102 S.Ct. 27, —— L.Ed.2d —— (1981); *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980); *Hardy v. Porter*, 613 F.2d 112, 114 (5th Cir. 1980); *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979).

■ The final factor that the court will consider is the extent to which the time

expended by the plaintiffs' attorneys was unproductive. None of the hours reported by the attorneys were unproductive in a work product sense. To the contrary, all work done was of a high caliber. Some of the time expended, however, was unproductive from a systemic viewpoint. On October 9, 1981, Hillwood opened settlement negotiations. The defendant asserts that it offered to settle the case for $5,000. The plaintiffs dispute this allegation. They argue that, on October 15, 1981, Hillwood mentioned a figure of $2,000 in damages plus $10,000 in attorney's fees. In any case, the plaintiffs rejected this offer. The defendant alleges that the plaintiffs' attorneys later indicated that they would recommend a settlement of $20,000 in damages and $15,000 in attorney's fees. The plaintiffs contend that the figure was $10,000 in damages plus their attorneys' fees to date. At the time of these negotiations, the court already had ruled that Hillwood's citizenship policy violated section 1981. *See Espinoza v. Hillwood Square Mutual Association*, 522 F.Supp. 559, 564 (E.D.Va. Sept. 16, 1981). Despite this fact, the Espinozas and Rajpal never made a formal settlement offer. At trial, the plaintiffs received only $1,500 in damages. Unfortunately, their decision to go to trial also generated several thousand dollars in attorney's fees. The court holds that it would be unreasonable to impose these additional fees on the defendant.

Once a civil rights plaintiff establishes that the defendant's conduct was unlawful, he has tremendous leverage over the defendant. This leverage arises from the fact that the plaintiff is now the prevailing party for the purpose of attorney's fees. If the defendant refuses the plaintiff's demand for damages, the plaintiff can threaten to proceed to trial. Under the general rule, the plaintiff could impose the cost of going to trial on the defendant, regardless of how low an amount the jury awards. The court, however, will not permit such an imposition of costs, unless the result at trial justifies the plaintiff's refusal to settle. The objective of the attorney's fee mechanism should be to encourage vindication of rights at the minimum cost to the system. A blind imposition of trial costs, however, would give a prevailing plaintiff's attorney an incentive to maximize his fees by refusing settlement. Such an incentive would have a deleterious effect on the system of enforcing civil rights. The court, therefore, holds that a civil rights plaintiff has a duty to minimize the costs of vindicating his rights. In particular, the plaintiff must make a reasonable settlement offer once the court decides the relevant legal issues in his favor.

The court holds that the Espinozas and Rajpal failed to offer a reasonable settlement. They had an opportunity to do so on October 9, 1981. The court already had decided the legal issues in the case. In addition, Hillwood allegedly had started the negotiation process by offering a $5,000 settlement. Even if the defendant did not make this offer, the parties did discuss the possibility of settlement. The plaintiffs' attorneys later refused Hillwood's offer by indicating that they would recommend a settlement of either $10,000 or $20,000 in damages plus attorneys' fees to date. This counteroffer was too high to be deemed reasonable.[4] Thus, the plaintiffs did not

---

4. In determining whether the plaintiffs' offer was reasonable, the court must look to jury awards in similar cases. A recent survey of housing discrimination cases brought under the Fair Housing Act and section 1981 demonstrates that the average award in such cases is well below the amount of the counteroffer in this case. *See* Schwemm, *Compensatory Damages in Federal Fair Housing Cases*, 16 Harv.C. R.–C.L.L.Rev. 83, 105–06 (1981). This survey produced the following summary of damage awards:

| Number of Awards | Amount of Award |
| --- | --- |
| 12 | Over $1,500 |
| 6 | $1,500 |
| 3 | Between $1,000 and $1,500 |
| 3 | $1,000 |
| 3 | Between $500 and $1,000 |
| 5 | $500 |
| 14 | Under $500 |

*Id.* at 106. Thus, in 34 out of 46 reported cases, the total award has been $1,500 or less. The plaintiffs clearly knew of this fact, because they cited the survey in one of their briefs. *See*

fulfill their duty to minimize the costs of enforcing their rights. The court, therefore, holds that all hours expended after October 9, 1981, were spent unreasonably. The one exception to this ruling is the time spent preparing the motion for injunctive relief. This motion was necessary regardless of whether the parties had reached a settlement on damages.

■ The plaintiffs claim that Sunderland spent 111.00 hours on the case, Blacher 386.75 hours, Klibaner 5.50 hours, and an unnamed paralegal 28.50 hours. After deleting the hours either spent on unsuccessful claims or expended after October 9, 1981, the following totals remain: Sunderland 39.31 hours, Blacher 227.13 hours, and an unnamed paralegal 14.25 hours. The court ordinarily would add to these totals the hours spent preparing the motion for attorney's fees. *See Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1980) (en banc); *McManama v. Lukhard,* 616 F.2d 727, 730 (4th Cir. 1980); *Northcross v. Board of Education,* 611 F.2d 624, 637 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). The court, however, holds that the plaintiffs' failure to make a reasonable settlement offer also rendered these hours unreasonable. The rationale is the same as that for deleting the other hours expended after October 9, 1981. Thus, the plaintiffs' attorneys reasonably spent the following hours: Sunderland 39.-31 hours, Blacher 227.13 hours, and an unnamed paralegal 14.25 hours.

## B. The Lodestar Figure

■ In order to calculate the lodestar figure, the court next must determine a reasonable hourly rate for each of the plaintiffs' attorneys. The plaintiffs claim the following rates: $85.00 per hour for Sunderland, $65.00 per hour for Blacher, and $15.00 for the unnamed paralegal. Sunderland is a partner in the Washington, D.C., firm of Terris & Sunderland. He has been practicing law since 1972. Blacher is an associate in Sunderland's firm. He has been practicing since 1977. Both attorneys previously have handled a large number of civil rights cases. The expertise of these lawyers justifies the rates claimed by the plaintiffs. *See DeMier v. Arlington County,* No. 80–1086–A, slip op. at 7 (E.D.Va. May 12, 1981). The court, therefore, accepts these figures as reasonable hourly rates.

Multiplying these hourly rates by the number of hours reasonably expended by each attorney yields the following fees: $3,341.60 for Sunderland, $14,763.12 for Blacher, and $213.75 for the paralegal. Summing these fees produces a lodestar figure of $18,318.47.

## C. Adjusting the Lodestar

The court now must adjust the lodestar on the basis of the twelve *Barber* factors. *See Anderson v. Morris,* 658 F.2d 246, 249 (4th Cir. 1981). As indicated earlier, these twelve factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

The court already has considered several of these factors in computing the lodestar.

Memorandum of Plaintiffs in Reply to Defendant's Response to Plaintiffs' Motion for Award of Attorney's Fees and Expenses, at 10. As a consequence, the court must hold that an offer to settle for $10,000 in damages plus attorney's fees was unreasonable in the present case.

It took into account the first, second, and eighth factors in calculating the hours reasonably expended. In addition, the court included the third, fourth, fifth, ninth, and eleventh factors in its determination of a reasonable hourly rate. The sixth factor is the only one of the remaining criteria that is relevant to this case. The seventh factor does not apply, because the case did not impose any special time limitations on the attorneys. The tenth factor is irrelevant, because the plaintiffs' cause was not undesirable within the legal community. The twelfth factor also does not result in an adjustment to the lodestar, because the court cannot find any prior cases that are similar enough to the present one to make a comparison worthwhile.

■ The sixth factor requires the court to consider the attorney's expectations at the outset of the litigation. The Fourth Circuit has not explained the meaning of this criterion. The Espinozas and Rajpal interpret this factor as referring to the risk of not receiving a fee award if litigation is unsuccessful. The plaintiffs argue that the court must adjust the lodestar upward to compensate their attorneys for assuming this risk at the beginning of the case. They assert that competent counsel will not prosecute a section 1981 claim without the possibility of receiving a contingency bonus if their client prevails. This interpretation of the sixth factor has substantial support in the case law. *See Copeland v. Marshall*, 641 F.2d 880, 892–93 (D.C.Cir.1980) (en banc); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones*, —— U.S. ——, 102 S.Ct. 27, —— L.Ed.2d —— (1981); *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 n.15 (5th Cir. 1980); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1273–74 (8th Cir.), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980); *Northcross v. Board of Education*, 611 F.2d 624, 638 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979).

The plaintiffs' construction of the sixth factor also makes some sense in economic terms. When an attorney decides whether to take a case, he considers his expected return from that employment. His expected return (ER) equals the fee that he will receive if his client wins ($F_w$) times the probability of winning ($P_w$) plus the fee that he will receive if his client loses ($F_l$) times the probability of losing ($P_l$):

$$ER = (F_w \times P_w) + (F_l \times P_l).$$

In a normal case, an attorney receives the same fee regardless of whether his client prevails. His expected return, therefore, equals his customary fee. In a section 1981 suit, however, a lawyer usually receives a fee only if he wins. In mathematical terms, $F_l$ equals zero. If $P_w$ is less than one, the attorney will not take a section 1981 case unless $F_w$ is greater than his customary fee. Thus, the court should award a contingency bonus to a prevailing plaintiff's attorney to compensate him for the risk of losing.

This analysis unfortunately does not answer the question of who should bear the cost of this contingency bonus. If the court places this burden on the defendant, the result is nonsensical. As the defendant's defense to a section 1981 action becomes stronger, $P_w$ decreases. As $P_w$ gets smaller, the contingency bonus that a losing defendant must pay increases. In effect, the defendant is penalized for having a strong case. The party who should bear the cost of the contingency bonus is the plaintiff. It is the plaintiff who receives the benefit of bringing a marginal or weak suit. The case law, however, does not support this conclusion. *See Copeland v. Marshall*, 641 F.2d at 892–93; *Jones v. Diamond*, 636 F.2d at 1382; *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d at 583 n.15; *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d at 1273–74; *Northcross v. Board of Education*, 611 F.2d at 638; *Lamphere v. Brown University*, 610 F.2d at 47. The court, therefore, must impose on the defendant any contingency bonus that it awards.

■ The court now must determine what contingency bonus is appropriate in

this case. The expected return desired here is the customary fee for the number of hours that the plaintiffs' attorneys have reasonably expended. This amount is the lodestar. Thus, the proper fee in this case ($F_w$) is the lodestar (L) divided by the probability of winning ($P_w$):

$$F_w = L \times \frac{1}{P_w}.$$

The court rules that $P_w$ in this case equals .90.[5] Thus, $\frac{1}{P_w}$ equals approximately 1.1. As a consequence, the court awards the Espinozas and Rajpal a 10% contingency bonus. This bonus increases the lodestar by $1,831.85 to a total of $20,-150.32.

### D. Calculating the Recoverable Expenses and Costs

The Espinozas and Rajpal seek to recover, in addition to attorney's fees, various expenses and costs attributable to the case. In particular, they request $1,796.33 in litigation expenses, $1,238.90 in local counsel fees, and $206.00 in court costs. The plaintiffs have fully documented these expenses and costs. The court, nonetheless, holds that the plaintiffs are entitled to recover only a portion of the requested amounts.

■ In *Wheeler v. Durham City Board of Education*, 585 F.2d 618 (4th Cir. 1978), the Fourth Circuit held that most litigation expenses are recoverable under the heading of attorney's fees:

[T]he question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses. We hold that it was.

Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney . . . .

*Id.* at 623 (footnotes omitted). *Accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones*, —— U.S. ——, 102 S.Ct. 27, —— L.Ed.2d —— (1981); *Northcross v. Board of Education*, 611 F.2d 624, 639–40 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). The *Wheeler* court, however, went on to rule that a plaintiff cannot recover the fees and expenses of nonlegal experts "under the rubric of attorneys' fees." 585 F.2d at 624. *Accord Northcross v. Board of Education*, 611 F.2d at 639–40. *But see Jones v. Diamond*, 636 F.2d at 1382. Thus, under the Fourth Circuit's standard, the court must award a prevailing plaintiff all reasonable litigation expenses. The one exception to this rule is the expense of hiring non-legal experts.

■ The plaintiffs in this case have submitted two lists of litigation expenses. The first one contains all expenses incurred through October 1, 1981. The court awards all of these amounts except the expert witness fees. The recoverable expenses total $1,023.62. The second list covers all expenses accumulated between October 1, 1981, and December 2, 1981. The court will assume that the plaintiffs incurred these amounts evenly over the two-month period. None of these expenses are attributable to nonlegal experts. The court, nonetheless, denies recovery of the portion of these expenses attributable to the period after October 9, 1981. The plaintiffs are not entitled to these expenses, because they failed to make a reasonable settlement offer. Thus, the court holds that the plaintiffs may recover only one-sixth of the amount on the second list. This reduced amount totals $37.12.

■ The Espinozas and Rajpal also seek an award of local counsel fees. These fees

---

5. The plaintiffs had an extremely low probability of success on their Fair Housing Act claim, because there was no evidence that Hillwood had discriminated on the basis of ancestry. Their probability of succeeding on the section 1981 issue, however, was about 90%. All of the on-point cases, except one district court opinion, supported the plaintiffs' position on

this issue. *See Espinoza v. Hillwood Square Mut. Assoc.*, 522 F.Supp. 559, 561 (E.D.Va. 1981). The legislative history and the plain language of the statute also favored the plaintiffs' interpretation of section 1981. *See id.* at 561–64. Thus, the plaintiffs' probability of succeeding on a significant issue was at least 90%.

are recoverable under section 1988 under the heading of either attorney's fees or litigation expenses. The plaintiffs claim that their local counsel reasonably spent 19.06 hours on the case. The court, however, notes that 11.83 of these hours were expended after October 9, 1981. The plaintiffs, therefore, may recover only the fees attributable to the first 7.23 hours. The court holds that $65.00 is a reasonable hourly rate for local counsel in this case. As a consequence, it awards the plaintiffs local counsel fees of $469.95.

Finally, the plaintiffs request an award of court costs under section 1920. *See* 28 U.S.C. § 1920 (1976). The court will permit recovery of the $60.00 filing fee and the $6.00 marshall's fee. The court, however, refuses to award the $140.00 interpreter's fee, because the plaintiffs failed to offer a reasonable settlement before trial. Thus, the plaintiffs are entitled to $66.00 in court costs.

The court has awarded the Espinozas and Rajpal a total of $1,596.69 in expenses and costs. This amount increases to $1,756.36 with the addition of a 10% contingency bonus. Thus, the court awards the plaintiffs a grand total of $21,906.68 in attorney's fees, expenses, and court costs.

## IV. CONCLUSION

The court has now completed the burdensome drill of computing an award of attorney's fees under section 1988. The sharing of fees produced by this computation is reasonably fair under the circumstances. The court, however, hopes that either Congress or the appellate courts will devise a method of calculating fees awards that is less cumbersome and time-consuming. The

best alternative for determining the amount of an award is to use an evidentiary hearing. At this hearing, the parties would introduce expert testimony on the reasonableness of the fee claimed by the plaintiff. The court then could estimate the proper award without resorting to precise computations. A switch to this method would cause a reduction in the accuracy of computing awards. This cost, however, would be more than offset by the savings in judicial time that would result.

## ORDER

This matter comes before the court on the plaintiffs' motion for an award of attorney's fees and expenses under section 1988. *See* 42 U.S.C. § 1988 (1976). In addition, the plaintiffs request reimbursement for court costs under section 1920. *See* 28 U.S.C. § 1920 (1976). Finally, the plaintiffs move to enjoin the defendants from practicing alienage discrimination in the future.

For the reasons stated in the accompanying Memorandum Opinion, the court GRANTS the plaintiffs' motions for an award of attorney's fees, expenses, and court costs. It ORDERS the defendant Hillwood Square Mutual Association to pay the plaintiffs the sum of $21,906.68 to meet this award. The court also GRANTS the plaintiffs' motion for injunctive relief. It enjoins the defendant Hillwood Square Mutual Association from discriminating on the basis of alienage in the future. The court, however, declines to impose any special conditions upon Hillwood's future selection of members.

The Clerk shall send a copy of this order and the accompanying Memorandum Opinion to all counsel of record.

## APPENDIX

Hours Reasonably Expended in Case

|  |  | Blacher | Sunderland | Paralegal |
|---|---|---|---|---|
| I. | Initial Factual Investigation | 6.00 | 2.75 | |
| II. | Initial Legal Research | 18.125 | | |
| III. | Preparation of Complaint | 19.00 | 1.75 | |

| | | | | |
|---|---|---|---|---|
| IV. | Interrogatories | 10.125 | .50 | |
| V. | Motion to Compel | 15.875 | 3.125 | |
| | | 1.50 | 1.50 | |
| VI. | Analysis of Responses | 6.25 | | |
| VII. | Factual Investigation | 13.25 | | 14.25 |
| VIII. | Responses to Discovery Requests | 23.00 | 1.00 | |
| IX. | Depositions | 9.00 | .25 | |
| X. | Motion for Summary Judgment | 35.75 | 8.25 | |
| | | 11.125 | 5.625 | |
| | | | 3.75 | |
| | | 1.75 | 1.75 | |
| | | 7.625 | .75 | |
| XI. | Proof of Damages | 4.00 | 1.063 | |
| XII. | First Pre-Trial Conference | 1.75 | | |
| XIII. | Preparation for Trial (pre 10/10/81) | 39.00 | 7.25 | |
| XIV. | Trial | 0 | 0 | |
| XV. | Motion for Injunctive Relief | 4.00 | | |
| | Total Hours | 227.125 | 39.313 | 14.25 |
| | Hourly Rate (x) | $65.00 | $85.00 | $15.00 |
| | Attorney's Fee | $14,763.12 | $3,341.60 | $213.75 |

LODESTAR FIGURE:

$14,763.12
3,341.60
213.75
$18,318.47