**REHABILITATION ASSOCIATION OF VIRGINIA, INC., Plaintiff,**

v.

**Robert C. METCALF, as Director of the Virginia Dept. of Medical Assistance Services,**

and

**Donna E. Shalala, as Secretary of the United States Dept. of Health and Human Services, Defendants.**

Civil No. 3:93CV402.

United States District Court, E.D. Virginia, Richmond Division.

June 5, 1998.

See also, 42 F.3d 1444.

521

522

Alexander Macdonald Macaulay, Mays & Valentine, Richmond, VA, David Gant Shuford, LeClair, Ryan, Richmond, VA, Peter F. Nadel, Joseph V. Willey, Rosenman & Colin, New York City, for Rehabilitation Ass'n of Virginia, Inc.

Pamela Malone Reed, Paige S. Fitzgerald, William Henry Hurd, Siran S. Faulders, Office of Attorney General, Richmond, VA, for Robert C. Metcalf.

Carol Federghi, Department of Justice Civil Div., Washington, DC, Robert William Jaspen, U.S. Attorney's Office, Richmond, VA, for Donna E. Shalala.

*MEMORANDUM*

MERHIGE, District Judge.

Plaintiff Rehabilitation Association of Virginia ("RAV"), brought this action pursuant to 42 U.S.C. § 1983 alleging that certain Medicaid Plan provisions were unlawful and invalid under federal law. On November 22, 1993, the Court entered an Order granting summary judgment in favor of RAV, holding, *inter alia*, that Robert C. Metcalf, as Director of the Virginia Department of Health and Human Services (the "State defendant"), acting under color of state law, had deprived RAV's members of rights secured by § 1983. In that same Order, the Court ordered that "Plaintiff shall recover their taxable costs and shall also recover reasonable counsel fees and expenses." There are three motions relating to the issue of attorney fees now pending before this Court. For the reasons which follow, the Court will (1) GRANT the Motion by Secretary of Health and Human Services to Alter, Amend or Clarify Pursuant to Rules 59(e) and 60(a); (2) DENY Robert C. Metcalf's Motion for Contribution and Apportionment of Attorneys Fees; and (3) GRANT Plaintiff's Petition for Expenses and Attorneys' Fees and enter judgment for the Plaintiff in the amount of $334,851.47 plus interest at the rate of 5.434% per annum from this date and continuing until such time as the State defendant satisfies the Court's award of attorneys' fees and costs.

*Procedural History*

Plaintiff Rehabilitation Association of Virginia is an association of rehabilitation agencies that provide services to Medicare and Medicaid eligible beneficiaries in the state of Virginia. RAV was formed in 1992, and one of its goals was to confront the Virginia Department of Medical Assistance Services about Virginia Medicaid Plan amendments of 1988 and 1990 which it believed to be unlawful and, if necessary, to organize a legal challenge to those amendments in federal court. In August of 1992, when RAV decided to bring this legal challenge, it retained the New York law firm of Rosenman & Colin, which has an experienced Health Care Practice Group. The head of that group, Peter F. Nadel, had recently won judgments

for other clients in a similar § 1983 action, *New York City Health and Hospitals v. Perales,* 954 F.2d 854 (2nd Cir.), *cert. denied,* 506 U.S. 972, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992), and other cases challenging state limitations on payment of Medicare cost-sharing for Qualified Medicare Beneficiaries ("QMBs"). Rosenman & Colin's local co-counsel was the Richmond law firm of Mays & Valentine, for whom LeClair Ryan was later substituted.

In this action, RAV sought declaratory and injunctive relief from a series of Virginia State Medicaid Plan Amendments that it believed nullified federal statutory rights concerning payment for services rendered to QMBs, a category of Medicare beneficiaries with incomes below federal poverty levels. QMBs include, but are not limited to, individuals who are dually eligible for benefits under the Medicare and Medicaid programs ("dual eligibles").

Specifically, the payments at issue are known as the Medicare "cost-sharing" amounts: the annual deductible and twenty percent coinsurance portion of the Medicare-approved costs or charges for which the Medicare-eligible patient remains personally liable. The Virginia Medicaid program had long reimbursed providers for such cost-sharing amounts on behalf of dual eligibles and other QMBs. Beginning in 1988, however, Virginia adopted a series of State Plan Amendments that, as applied, prohibited direct payment of such cost-sharing amounts for therapy services furnished to patients in nursing facilities. Effective January 1, 1991, Virginia also amended its Medicaid State Plan to reduce or eliminate State payments of cost-sharing amounts for all Medicare Part B covered services furnished to QMBs. This reduction or elimination was effected by limiting total payments to providers to the Medicaid rate or fee for the particular service.

On November 22, 1993, the Court granted Plaintiff's motion for summary judgment, holding that health care providers that render services to QMBs are entitled to recover 100% of their Medicare-determined reasonable costs and charges. The Court also held that the State's refusal to pay Medicare de-

ductible and coinsurance amounts in full for services furnished to QMBs in nursing facilities, and to pay such amounts directly to rehabilitation agencies such as members of Plaintiff's organization, violated the Medicare and Medicaid Acts. By decision dated December 5, 1994, the Fourth Circuit affirmed this Court's November 22, 1993 summary judgment decision. *See Rehabilitation Ass'n of Virginia v. Kozlowski*, 42 F.3d 1444 (4th Cir.1994), *cert. denied*, 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995).

I. *Motion by Secretary of Health and Human Services to Alter, Amend or Clarify Pursuant to Rules 59(e) and 60(a)*

■ On December 7, 1993, the Secretary of Health and Human Services (the "Federal defendant") moved pursuant to Rules 59(e) and 60(a) to Alter, Amend or Clarify this Court's November 22, 1993 Order. That Order provided for reasonable counsel fees and expenses, but did not specify whether they were to be recovered against both defendants. The Federal defendant requests that the Court (1) alter, amend or clarify the Order to state that fees and expenses are not to be awarded against them, and (2) order the Plaintiff to submit an application for fees, if it wishes, to address its eligibility for an award and whether the government's position was substantially justified, as well as the amount of such requested fees.

In support of her motion, the Federal defendant notes that in cases brought under the Medicare or Medicaid Acts, attorney's fee awards are governed by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Pursuant to the EAJA, the Court shall award fees to a "prevailing party" in a civil action brought against the United States. 28 U.S.C. § 2412(d). However, if the Court finds that the position of the United States was "substantially justified" or that "special circumstances make an award unjust," it shall not award attorney fees. *See* 28 U.S.C. § 2412(d)(1)(A) Additionally, the statute mandates that a "party seeking an award of fees or other expenses shall ... submit to the court an application ... which shows that the party is a prevailing party and is eligible to receive an award under this

subsection, and the amount sought.... The party shall also allege that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). Once the application has been submitted, the government bears the burden of establishing that its position was "substantially justified." *Lively v. Bowen,* 858 F.2d 177, 179–80 (4th Cir.1988)

Therefore, "[e]ligibility for an award of fees under the EAJA requires: (1) that the claimant be a 'prevailing party'; (2) that the government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and (4) that the fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement. 28 U.S.C. § 2412." *Crawford v. Sullivan,* 935 F.2d 655, 656 (4th Cir.1991).

At this time, the Plaintiff has not submitted an application for attorney fees against the Federal defendant as required by the statute. In fact, the Plaintiff's motion only asks for attorney fees against the State defendant. Furthermore, the Plaintiff never responded to the Federal defendant's motion to amend and has not alleged that the Federal defendant's position was not substantially justified in any other pleading. Therefore, based on these facts, the motion to amend will be granted.

II. *Robert C. Metcalf's Motion for Contribution and Apportionment of Attorneys Fees*

A. *Is the Federal Government Liable for Attorney Fees?*

■ Although the Plaintiff has not requested fees from the Federal defendant, the State defendant seeks contribution from the Federal defendant for its liability for reasonable attorney's fees and expenses incurred in this litigation. In support of its motion, the State defendant argues that the Court's November 22, 1993 Order entered judgment against both the federal and state defendants. The State defendant cites 28 U.S.C. § 2412(b) which states that the United States is liable for attorney's fees "to the same extent that any other party would be liable

under the common law or under the terms of any statute which specifically provides for such an award."[1] 28 U.S.C. § 2412(b) (1982). Section 1988, in turn, specifically provides liability for the United States for attorney's fees if it is found liable for a violation of § 1983.[2] However, the Federal defendant in the case at bar is not liable for a fee award under § 2412 by way of § 1988 for two reasons: (1) the Court did not find the Federal defendant liable for a violation of § 1983; and (2) it is well established that § 2412(b) does not create fee liability for the federal government for § 1983 actions or their equivalent. *See e.g. Unification Church v. I.N.S.*, 762 F.2d 1077, 1081 (D.C.Cir.1985).

Plaintiff asserts that this case was not brought entirely under § 1983, but was also brought under 42 U.S.C. § 1395 *et. seq.*, 42 U.S.C. § 1396 *et seq.*, and 5 U.S.C. § 701 *et seq.* Plaintiff argues that those federal statutes bring the Federal defendant within the language of § 2412(b). The Court disagrees. Although this action was not brought solely under section 1983, section 1988, the fee provision corresponding to § 1983's substantive authority, is the sole statutory basis for an award of fees in this action. There are no statutory provisions entitling plaintiffs who prevail under 42 U.S.C. § 1395 *et seq.*, 42 U.S.C. § 1396 *et seq.*, or 5 U.S.C. § 701 *et seq.* to recover attorney's fees and expenses.

■ Finally, the State defendant argues that its interpretation of the language of 28 U.S.C. § 2412(b) provides the authority for the Court to hold the Federal defendant liable for fees under that section. Specifically, the State defendant suggests that the first sentence of section 2412(b) *permits* fee awards against the government generally and should be read separately from the sec-

ond sentence which *requires* such awards in certain cases. The State defendant's argument is not entirely clear, but he seems to conclude from this structure that the first provision of section 2412(b) places no limitation on the Court's ability to award fees against the federal government. This reading is incorrect. Section 2412(b) is a waiver of sovereign immunity and, as such, is to be construed narrowly. *See Hall v. United States*, 773 F.2d 703, 707 (6th Cir.1985). The second sentence of section 2412(b) serves as a limitation on the first sentence, such that section 2412(b) authorizes an award of fees only "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). As previously discussed, section 2412(b) does not create fee liability for the federal government for § 1983 actions. *See Unification Church*, 762 F.2d at 1081. Thus, the Federal defendant is not liable for attorney's fees under section 2412(b), and the Court will therefore deny the State defendant's motion for contribution.

B. *Should Liability be Apportioned When the Federal Defendant is Immune From Liability For Attorney's Fees?*

■ The State defendant also asks the Court to apportion the fees and costs between itself and the Federal defendant to the end that the Federal defendant be held liable for eighty percent of the attorney's fees awarded and the State defendant for twenty percent. In its response to the State defendant's motion for contribution, the Federal defendant agrees that the fee award should be apportioned between the two defendants, although it urges the Court to apportion fifty

---

1. 28 U.S.C. § 2412(b) provides that
 unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be

liable under the common law or under the terms of any statute which specifically provides for such award.

2. 42 U.S.C. § 1988 provides that
 [i]n any action or proceeding to enforce a provision of sections ... 1983 ... of this title [42 U.S.C.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

percent of the award to each party. The Federal defendant argues that because it is immune from fees, requiring the State defendant to pay one-hundred percent of the fees under the theory of "joint and several liability" would be inequitable. The Federal defendant's apparent display of generosity in this regard is more readily understood when viewed in consideration of the following paragraphs of this memorandum. In short, the Court disagrees with the suggestion that the State Defendant would be unfairly burdened.

The Federal defendant admits that it has a stake in the amount of fees the State defendant is required to pay. That is, despite the fact that the Federal defendant is immune from attorney's fees under § 2412(b) via § 1988, section 1396b(a)(7) of the Medicaid Act requires the federal government to pay federal Medicaid matching funds for one-half of the state's fee liability. Therefore, the Federal defendant's concern that the State defendant is being required to pay the full amount appears to be motivated by her interest in reducing the amount of matching funds she will have to pay to the State.

Notwithstanding the state and federal defendants' ingenious argument, the Federal defendant's immunity from fee liability does not change the fact that the State defendant is jointly and severally liable for one hundred percent of the attorney's fees awarded to Plaintiff under section 1988. *See United States v. City of Buffalo,* 770 F.Supp. 108, 112 (W.D.N.Y.1991) (rejecting City's argument that fees under § 1988 should be apportioned between it and United States for "collective position taken" in litigation and imposing joint and several liability on City for award of fees and expenses). This Court, for the reasons stated, concludes that the State's Motion for Contribution and Apportionment must be denied.

III. *Plaintiff's Petition for Expenses and Attorneys' Fees*

On November 21, 1995, Plaintiff filed its petition for award of expenses and attorneys' fees against the State defendant pursuant to 42 U.S.C. § 1988. As previously discussed, Plaintiff does not seek fees from the Federal defendant. Plaintiff originally brought this

action under § 1983, of which 42 U.S.C. § 1988 is the attorneys' fee counterpart. Section 1988 provides in pertinent part that:

> In any action or proceeding to enforce a provision of sections ... 1983 ... of this title [42 U.S.C.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The State defendant concedes that (1) Plaintiff was the prevailing party; (2) the action was brought to enforce a provision of 42 U.S.C. § 1983; and (3) pursuant to 42 U.S.C. § 1988 the Court, in its discretion, may allow the Plaintiff a reasonable attorneys' fee. The State defendant complaints only about the requested amount, which is $389,092.33 in attorneys' fees for the work of two law firms and $9,613.91 in expenses.

A. *The Lodestar Amount*

■■ Allowance and computation of an attorneys' fees award is "within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 (4th Cir.1978), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). In deciding reasonable attorney's fees, the Court must determine the reasonable rate and reasonable hours for counsel's work by considering the twelve factors enumerated in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Daly v. Hill,* 790 F.2d 1071, 1078 (4th Cir.1986) ("As *Blum* makes clear, the lodestar fee is now the proper focus of the entire *Johnson* analysis in most cases.").

The *Johnson* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the preclusion of other employment by the attorney as a result of acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and

ability of the attorney; (10) the "undesirability" of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship with the client; and (12) attorneys' fees awards in similar cases. *See Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (utilizing *Johnson* factors). There is no strict formula, however, as to the application of the *Johnson* factors. *Trimper v. City of Norfolk, Virginia,* 846 F.Supp. 1295, 1303 (E.D.Va.1994), *aff'd,* 58 F.3d 68 (4th Cir.), *cert. denied,* 516 U.S. 997, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995).

 The movant bears the burden of "establish[ing] the reasonableness of the requested amount," *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (citing *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541), both by showing the reasonableness of the rate claimed and the number of hours spent. *See Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987), *cert. denied sub nom, City of Fayetteville, N.C. v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *EEOC v. Nutri/System, Inc.,* 685 F.Supp. 568, 573 (E.D.Va.1988) ("Inadequate documentation is a basis for reducing or denying a fee award."). "The prevailing market rate [for attorney's fees] may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987).

 In *Rum Creek Coal Sales,* the Fourth Circuit held that the trial court must first look to the community in which the court sits to determine reasonable hourly rates. "Rates charged by attorneys in other cities, however, may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 179 (4th Cir.1994) (citing *National Wildlife Federation v. Hanson,* 859 F.2d 313, 317 (4th Cir.1988)). In the case at bar, Plaintiff obtained counsel in New York City, whose billing rate is $380.00 per hour. The State argues that competent counsel could have been engaged in this area at a lower rate than charged in New York. The Court agrees.

Plaintiff has failed to rebut the presumption that the hourly fee of its counsel should be derived from the community in which the court sits. Indeed, Plaintiff presents no evidence of the need to retain counsel from outside this area other than assertions that the New York law firm of Rosenman & Colin had a great deal of expertise with the issues involved in this case. The fact that counsel from outside the area has expertise is not sufficient to justify requiring the State defendant to reimburse Plaintiff at rates considered unreasonable in this area. To justify the necessity of obtaining out-of-town counsel, Plaintiff was required to present evidence that it tried and was unable to obtain a local attorney who could provide competent representation. *See Morse v. Republican Party of Virginia,* 972 F.Supp. 355, 365 (W.D.Va.1997) (declining to award attorneys fees at rates in excess of the local market when applicants failed to present evidence that "a local attorney could not have provided plaintiffs with competent representation"). Because Plaintiff has not made the requisite showing of the necessity to obtain out-of-town counsel, the Court will consider the proper market from which to determine reasonable hourly rates as the market where this Court sits—Richmond, Virginia.

 Therefore, the Court must determine the reasonable rate in Richmond for experienced health care attorneys. *See Buffington v. Baltimore County Md.,* 913 F.2d 113, 130 (4th Cir.1990). Plaintiff has presented very little evidence of the customary billing rates in Richmond. Plaintiff's counsel from Rosenman & Colin have presented no evidence of customary billing rates in Richmond. Counsel from LeClair Ryan present only an affidavit from David G. Shuford of LeClair Ryan, one of Plaintiff's counsel, who states that it is his opinion that the hourly rates charged by Mays & Valentine and Le-

Clair Ryan, which appear to be \$85–\$90 per hour for associates and \$170–\$180 for partners with Mr. Shuford's experience, are comparable to, if not slightly lower than, the hourly rates charged by other major law firms in the Richmond area. The State defendant does not challenge the attorneys' fees award sought by counsel at LeClair Ryan. Therefore, based on Mr. Shuford's affidavit, consideration of the *Johnson* factors, and the Court's own experience, the Court concludes that LeClair Ryan's rates are reasonable for attorneys of their experience in the Richmond area.

 However, the evidence presented to the Court is inadequate for a determination of the reasonable hourly rate in Richmond for an attorney of similar experience, skill, and reputation as the attorneys from Rosenman & Colin in the unique and challenging issues of this case. In the absence of this evidentiary base, the court may set a reasonable hourly rate based upon its own knowledge and experience, *see EEOC v. Nutri/System, Inc.,* 685 F.Supp. 568, 576 (E.D.Va. 1988), and consideration of the *Johnson* factors. That determination must account for the high quality of representation counsel from the law firm of Rosenman & Colin, were able to provide because of their extensive experience in health care law and the particular issues involved in this litigation. *See Spell v. McDaniel,* 852 F.2d 762, 765 (4th Cir.1988). The Court is well aware that the Mays & Valentine firm, which has been in existence for decades, as well as the LeClair Ryan firm, are staffed with lawyers of exceptional capability. The fact is that the New York firm, by virtue of its prior specific experience, was particularly well suited for the handling of this case. Based on the Court's own judgment about the degree of experience and quality of representation provided by counsel from Rosenman & Colin

and consideration of the *Johnson* factors *infra,* the Court concludes that the reasonable rate for Peter F. Nadel is \$300 per hour and that a rate of \$250 per hour is reasonable for Joseph V. Willey. The time spent by various associates at Rosenman & Colin will be compensated at a rate of \$85 per hour, the rate charged for an associate's time at LeClair Ryan, because no information has been provided to the Court about the experience level of any of these associates, and the only evidence presented about the customary rates for an associate's time is the fee charged for such services by LeClair Ryan. Finally, the Court will award no fees for the work of law clerks and paralegals because Plaintiff fails to present evidence of the billing custom or the rates billed for such in Richmond. *See Missouri v. Jenkins,* 491 U.S. 274, 286–87, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (holding that 42 U.S.C. § 1988 may permit recovery of those charges according to the custom of the community).

 Next, the Court must determine how many hours were reasonably necessary to effectively handle this case. In this evaluation, the Court is precluded from simply accepting as reasonable the number of hours reported by counsel. *Espinoza v. Hillwood Square Mutual Ass'n,* 532 F.Supp. 440, 446 (E.D.Va.1982) (citation omitted). The State defendant challenges numerous specific entries in the Plaintiff's attorneys billing records. The court does not attempt to reconcile each of these entries with the State defendant's protests because the Court believes any unrecoverable hours billed by Plaintiff's attorneys are remedied by the Court's consideration of the *Johnson* factors *infra.* Therefore, we adopt the Plaintiff's calculations regarding the hours expended on this litigation.[3] The result is contained in the following table:

---

**3.** The hours billed by attorneys at Rosenman & Colin do not include time that those attorneys deemed were not properly attributable to this

matter as follows: Nadel excluded 7.2 hours; Willey excluded 7.3 hours; and "other associates'" time excludes 3.5 hours.

| Attorney | Hours Expended | Hourly Rate | Hours × Rate | Expenses |
|---|---|---|---|---|
| **Rosenman & Colin's Fees and Expenses** | | | | $ 9,613.91 |
| Nadel | 471.6 | $300 | $141,480.00 | |
| Willey | 621.3 | $250 | $155,325.00 | |
| other associates at Rosenman & Colin | 158.3 | $ 85 | $ 13,455.50 | |
| **Mays & Valentine's Fees and Expenses** | | | | $ 775.21 |
| Shuford | 1.2 | $170 | $ 204.00 | |
| | 95.0 | $180 | $ 17,100.00 | |
| Roerty | 9.2 | $ 85 | $ 782.00 | |
| MaCaulay | 5.1 | $ 90 | $ 459.00 | |
| **LeClair Ryan's Fees and Expenses** | | | | $ 363.86 |
| Shuford | 112.5 | $175 | $ 19,687.50 | |
| **Total:** | | | **$348,493.00** | **$10,752.98** |

In sum, the total lodestar for all of the Plaintiffs' attorneys combined equals $348,-493.00.

B. *Consideration of the Johnson Factors*

 In urging the Court to honor its counsel's hourly fee and hours billed, Plaintiff's focus on several of the *Johnson* factors. Plaintiff argues that the legal questions raised were novel and difficult. Both the Court and the State defendant agree. Indeed, the Fourth Circuit's opinion on appeal laments the complexity of the statutory issues involved in the case:

There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience. Indeed, one approaches them at the level of specificity herein demanded with dread, for not only are they dense reading of the most tortuous kind, but Congress also revisits the area frequently, generously cutting and pruning in the process and making any solid grasp of the matters addressed merely a passing phase.

42 F.3d at 1450.

Thus, the legal issues handled by Plaintiff's counsel were particularly complex and required counsel with a great deal of skill and expertise. Lead counsel for Plaintiff, Rosenman & Colin, were uniquely qualified and experienced to handle this litigation by virtue of prior representation in similar cases. Local counsel, who was initially Mays & Valentine and later LeClair Ryan, was also important to the success of Plaintiff's claim. Plaintiff's have explained that local and New York counsel were careful not to duplicate efforts and tasks and that local counsel were needed to review, revise, and file pleadings and motions, attend court proceedings, oversee pre-trial discovery, defend depositions, and otherwise fulfill the role of local co-counsel.

 In determining the reasonableness of a fee award, Plaintiff's also urge the Court to consider the degree of success obtained, which the Supreme Court has held to be "the most critical factor" in determining the reasonableness of a fee award. *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Where a plaintiff prevails on only some of the claims asserted, the number of hours may be adjusted downward, "but where full relief is obtained, the plaintiff's attorney should receive 'a fully compensatory fee,' and in some cases of exceptional success, even an enhancement." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). The relief obtained by Plaintiff was quite substantial. The Court's order granted all the relief sought by Plaintiff. Furthermore, Defendant Metcalf's predecessor, Director Bruce Kozlowski, testified that the fiscal impact of the Court's ruling as projected by the State defendant of Virginia

would be close to ten million dollars annually, although the parties have not presented evidence to the Court about the accuracy of that estimation.

At a February 27, 1998 hearing on Plaintiff's petition for attorney's fees, the Federal defendant submitted a Notice of Recent Legislation Relevant to the Issues Litigated in this Matter in which she argued that Section 4714 of the Balanced Budget Act of 1997 overrules this Court's and the Fourth Circuit's holdings in this case, at least for "payment for (and with respect to provider agreements with respect to) items and services furnished on or after the date of the enactment of this Act," which was August 5, 1997. Pub.L. No. 105–33, § 4714(c). The State defendant urges the Court to take into account, in determining the appropriate fee award, that because of the passage of the Balanced Budget Act of 1997, the amount involved and the results obtained have been significantly curtailed. The Court declines to decide whether Section 4714 overruled the holding of Court or that of the Fourth Circuit in this case, but concludes that even if the enactment of Section 4714 has some limiting effect on the results Plaintiff's obtained in this case, Plaintiff has nonetheless obtained quite a substantial remedy from this Court, including declaratory and injunctive relief. Thus, the Court takes note of the passage of the Balanced Budget Act of 1997, but it has little, if any, effect on the Court's decision of an appropriate award to compensate Plaintiff for fees incurred in 1993, 1994, and 1995 in obtaining favorable rulings in both this Court and in the Fourth Circuit.

The State defendant also raises concerns under various of the *Johnson* factors and urges the Court to hold that only 390 hours were reasonable for all of Plaintiff's counsel to have expended in this case, compensated at the rate charged by attorneys of similar experience in Richmond. Some of the State defendant's more pressing concerns are: (1) the fee award sought by RAV is much greater than the that awarded in similar cases; (2) because Rosenman & Colin have so much experience with the issues litigated in this case, they should not have required as many hours to litigate this case, particularly because some sections of their briefs quote verbatim from briefs filed in other cases; (3) this case could have been litigated using local counsel, thus reducing the hourly rate and the need for travel expenses; (4) Rosenman & Colin billed for time spent on other related cases; (5) the billing submitted by Rosenman & Colin contains insufficient detail of the nature of the tasks being billed; and (6) many of the hours charged by Rosenman & Colin are "excessive, redundant and duplicative of work performed by other attorneys or in other cases." State defendant Objection at p. 15. Some of these concerns are meritorious while others are not. The Court particularly notes, however, that its review of Plaintiff's attorney's billing statements does not reveal any impropriety in billing practices, as alleged by the State defendant. In sum, however, the State defendant's objections lead the Court to conclude that a reduction of seven percent is appropriate to achieve fairness and equity in the attorneys' fees award for this case. Reducing the lodestar by seven percent results in an attorneys' fees award of $324,098.49.

### C. Costs and Expenses

 Although § 1988 speaks only of recovering "attorney's fees," a prevailing plaintiff is also entitled to its reasonable expenses under section 1988. *See Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988) ("A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."). Rosenman & Colin seeks reimbursement of $9,613.91 in disbursements incurred. These disbursements include charges for computerized legal research on Lexis and Westlaw, word processing, photocopying, out of town travel expenses, postage, and overnight courier charges. Mays & Valentine seeks reimbursement of $775.21 in expenses, and LeClair Ryan seeks $363.86 for expenses such as copying, depositions, and phone calls.

The Court finds these expense requests to be reasonable and will award each of the firms the amount they have requested for a total of $10,752.98.

*Conclusion*

In conclusion, the Court concludes that the Plaintiff is entitled to an award of attorneys' fees in the amount of $324,098.49 and expenses in the amount of $10,752.98. Judgment will be entered in favor of the Plaintiff in the amount of $334,851.47 plus interest at the rate of 5.434% per annum from this date until such time as the State defendant satisfies the Court's award of attorneys' fees and costs.